# PENSON *v.* OHIO

No. 87–6116.   Argued October 12, 1988—Decided November 29, 1988

*Gregory L. Ayers*, by appointment of the Court, 485 U. S. 957, argued the cause for petitioner. With him on the briefs

were *Randall M. Dana, David C. Stebbins,* and *George A. Lyons.*

*Mark B. Robinette* argued the cause for respondent. With him on the brief was *Lee C. Falke.**

JUSTICE STEVENS delivered the opinion of the Court.

In *Anders* v. *California,* 386 U. S. 738 (1967), we gave a negative answer to this question:

> "May a State appellate court refuse to provide counsel to brief and argue an indigent criminal defendant's first appeal as of right on the basis of a conclusory statement by the appointed attorney on appeal that the case has no merit and that he will file no brief?" Brief for Petitioner in *Anders* v. *California,* O. T. 1966, No. 98, p. 2.

The question presented by this case is remarkably similar and therefore requires a similar answer.

I

Petitioner is indigent. After a trial in the Montgomery County, Ohio, Court of Common Pleas, he and two codefendants were found guilty of several serious crimes. Petitioner was sentenced to a term of imprisonment of 18 to 28 years. On January 8, 1985, new counsel was appointed to represent him on appeal. Counsel filed a timely notice of appeal.

On June 2, 1986, petitioner's appellate counsel filed with the Montgomery County, Ohio, Court of Appeals a document captioned "Certification of Meritless Appeal and Motion." Excluding this caption and the certificate evidencing its serv-

---

*Briefs of *amici curiae* urging reversal were filed for the American Civil Liberties Union et al. by *Larry W. Yackle, John A. Powell, Steven R. Shapiro,* and *Kim Robert Fawcett;* and for the National Association of Criminal Defense Lawyers by *Bruce S. Rogow.*

*Gloria A. Eyerly* and *Harry R. Reinhart* filed a brief for the Ohio Association of Criminal Defense Lawyers as *amicus curiae.*

ice on the prosecutor's office and petitioner, the document in its entirety read as follows:

> "Appellant's attorney respectfully certifies to the Court that he has carefully reviewed the within record on appeal, that he has found no errors requiring reversal, modification and/or vacation of appellant's jury trial convictions and/or the trial court's sentence in Case No. 84–CR–1056, that he has found no errors requiring reversal, modification and/or vacation of appellant's jury trial convictions and/or the trial court's sentence in Case No. 84–CR–1401, and that he will not file a meritless appeal in this matter.
>
> "MOTION
>
> "Appellant's attorney respectfully requests a Journal Entry permitting him to withdraw as appellant's appellate attorney of record in this appeal thereby relieving appellant's attorney of any further responsibility to prosecute this appeal with the attorney/client relationship terminated effective on the date file-stamped on this Motion."   App. 35–36.

A week later, the Court of Appeals entered an order allowing appellate counsel to withdraw and granting petitioner 30 days in which to file an appellate brief *pro se.*   *Id.,* at 37. The order further specified that the court would thereafter "independently review the record thoroughly to determine whether any error exists requiring reversal or modification of the sentence . . . ."   *Ibid.*   Thus, counsel was permitted to withdraw before the court reviewed the record on nothing more than "a conclusory statement by the appointed attorney on appeal that the case has no merit and that he will file no brief."   Moreover, although granting petitioner several extensions of time to file a brief, the court denied petitioner's request for the appointment of a new attorney.   No merits brief was filed on petitioner's behalf.

In due course, and without the assistance of any advocacy for petitioner, the Court of Appeals made its own examination of the record to determine whether petitioner received "a fair trial and whether any grave or prejudicial errors occurred therein." *Id.*, at 40. As an initial matter, the court noted that counsel's certification that the appeal was meritless was "highly questionable." *Ibid.* In reviewing the record and the briefs filed by counsel on behalf of petitioner's codefendants, the court found "several arguable claims." *Id.*, at 41. Indeed, the court concluded that plain error had been committed in the jury instructions concerning one count.[1] The court therefore reversed petitioner's conviction and sentence on that count but affirmed the convictions and sentences on the remaining counts. It concluded that petitioner "suffered no prejudice" as a result of "counsel's failure to give a more conscientious examination of the record" because the court had thoroughly examined the record and had received the benefit of arguments advanced by counsel for petitioner's two codefendants. *Ibid.* Petitioner appealed the judgment of the Court of Appeals to the Ohio Supreme Court, which dismissed the appeal. *Id.*, at 45. We granted certiorari, 484 U. S. 1059 (1988), and now reverse.

## II

Approximately a quarter of a century ago, in *Douglas* v. *California*, 372 U. S. 353 (1963), this Court recognized that the Fourteenth Amendment guarantees a criminal appellant the right to counsel on a first appeal as of right. We held

---

[1] Petitioner was charged in counts 5 and 6 of the indictment with felonious assault. App. 6–7; see Ohio Rev. Code Ann. § 2903.11(A)(2) (1987). In examining the record, the Court of Appeals discovered that the trial court neglected to instruct the jury concerning an element of this crime. Applying the State's plain-error doctrine, which requires a showing of substantial prejudice, the Court of Appeals reversed petitioner's conviction under count 6 of the indictment, but let stand his conviction under count 5. App. 41–43.

that a procedure in which appellate courts review the record and "appoint counsel if in their opinion" the assistance of counsel "would be helpful to the defendant or the court," *id.*, at 355, is an inadequate substitute for guaranteed representation.[2] Four years later, in *Anders* v. *California,* 386 U. S. 738 (1967), we held that a criminal appellant may not be denied representation on appeal based on appointed counsel's bare assertion that he or she is of the opinion that there is no merit to the appeal.

The *Anders* opinion did, however, recognize that in some circumstances counsel may withdraw without denying the indigent appellant fair representation provided that certain safeguards are observed: Appointed counsel is first required to conduct "a conscientious examination" of the case. *Id.*, at 744. If he or she is then of the opinion that the case is wholly frivolous, counsel may request leave to withdraw. The request "must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Ibid.* Once the appellate court receives this brief, it must then itself conduct "a full examination of all the proceeding[s] to decide whether the case is wholly frivolous." *Ibid.* Only after this separate inquiry, and only after the appellate court finds no nonfrivolous issue for appeal, may the court proceed to consider the appeal on the merits without the assistance of counsel. On the other hand, if the court disagrees with counsel—as the Ohio Court of Appeals did in this case—and concludes that there are nonfrivolous issues for appeal, "it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal." *Ibid.*

---

[2] In reaching this conclusion, the Court noted:

"At this stage in the proceedings only the barren record speaks for the indigent, and, unless the printed pages show that an injustice has been committed, he is forced to go without a champion on appeal. Any real chance he may have had of showing that his appeal has hidden merit is deprived him when the court decides on an *ex parte* examination of the record that the assistance of counsel is not required." 372 U. S., at 356.

It is apparent that the Ohio Court of Appeals did not follow the *Anders* procedures when it granted appellate counsel's motion to withdraw, and that it committed an even more serious error when it failed to appoint new counsel after finding that the record supported several arguably meritorious grounds for reversal of petitioner's conviction and modification of his sentence. As a result, petitioner was left without constitutionally adequate representation on appeal.

The Ohio Court of Appeals erred in two respects in granting counsel's motion for leave to withdraw. First, the motion should have been denied because counsel's "Certification of Meritless Appeal" failed to draw attention to "anything in the record that might arguably support the appeal."[3] *Ibid.* The so-called "*Anders* brief" serves the valuable purpose of assisting the court in determining both that counsel in fact conducted the required detailed review of the case[4] and that

---

[3] Counsel's "Certification of Meritless Appeal," which simply noted that counsel, after carefully reviewing the record, "found no errors requiring reversal, modification and/or vacation of appellant's" conviction or sentence, App. 35, bears a marked resemblance to the no-merit letter we held inadequate in *Anders.* The no-merit letter at issue in *Anders* read as follows:

"Dear Judge Van Dyke:

"This is to advise you that I have received and examined the trial transcript of CHARLIE ANDERS as it relates to his conviction of the crime of possession of narcotics.

"I will not file a brief on appeal as I am of the opinion that there is no merit to the appeal. I have visited and communicated with Mr. Anders and have explained my views and opinions to him as they relate to his appeal.

"Mr. Anders has advised me that he wishes to file a brief in this matter on his own behalf. . . ." Tr. of Record in *Anders* v. *California,* O. T. 1966, No. 98, p. 6.

[4] Not only does the *Anders* brief assist the court in determining that counsel has carefully reviewed the record for arguable claims, but, in marginal cases, it also provides an independent inducement to counsel to perform a diligent review:

"The danger that a busy or inexperienced lawyer might opt in favor of a one sentence letter instead of an effective brief in an individual marginal

the appeal is indeed so frivolous that it may be decided without an adversary presentation. The importance of this twin function of the *Anders* brief was noted in *Anders* itself, 386 U. S., at 745, and was again emphasized last Term. In our decision in *McCoy* v. *Court of Appeals of Wisconsin*, 486 U. S. 429 (1988), we clearly stated that the *Anders* brief is designed both "to provide the appellate courts with a basis for determining whether appointed counsel have fully performed their duty to support their clients' appeal to the best of their ability," and also to help the court make "the critical determination whether the appeal is indeed so frivolous that counsel should be permitted to withdraw." *Id.*, at 439. Counsel's failure to file such a brief left the Ohio court without an adequate basis for determining that he had performed his duty carefully to search the case for arguable error and also deprived the court of the assistance of an advocate in its own review of the cold record on appeal.[5]

Moreover, the Court of Appeals should not have acted on the motion to withdraw before it made its own examination of the record to determine whether counsel's evaluation of the

---

case is real, notwithstanding the dedication that typifies the profession. If, however, counsel's ultimate evaluation of the case must be supported by a written opinion 'referring to anything in the record that might arguably support the appeal,' *[Anders,]* 386 U. S., at 744 . . . , the temptation to discharge an obligation in summary fashion is avoided, and the reviewing court is provided with meaningful assistance." *Nickols* v. *Gagnon*, 454 F. 2d 467, 470 (CA7 1971) (footnotes omitted), cert. denied, 408 U. S. 925 (1972).

In addition, simply putting pen to paper can often shed new light on what may at first appear to be an open-and-shut issue.

[5] One hurdle faced by an appellate court in reviewing a record on appeal without the assistance of counsel is that the record may not accurately and unambiguously reflect all that occurred at the trial. Presumably, appellate counsel may contact the trial attorney to discuss the case and may thus, in arguing the appeal, shed additional light on the proceedings below. The court, of course, is not in the position to conduct such *ex parte* communications.

case was sound.[6]   This requirement was plainly stated in *Ellis* v. *United States*, 356 U. S. 674, 675 (1958), it was repeated in *Anders*, 386 U. S., at 744, and it was reiterated last Term in *McCoy*, 486 U. S., at 442.   As we explained in *McCoy*:

> "To satisfy federal constitutional concerns, an appellate court faces two interrelated tasks as it rules on counsel's motion to withdraw.   First, it must satisfy itself that the attorney has provided the client with a diligent and thorough search of the record for any arguable claim that might support the client's appeal.   Second, it must determine whether counsel has correctly concluded that the appeal is frivolous." *Ibid.*

Most significantly, the Ohio court erred by failing to appoint new counsel to represent petitioner after it had determined that the record supported "several arguable claims." App. 41.   As *Anders* unambiguously provides, "if [the appellate court] finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal."  386 U. S., at 744; see also *McCoy*, 486 U. S., at 444 ("Of course, if the court concludes that there are nonfrivolous issues to be raised, it must appoint counsel to pursue the appeal and direct that counsel to prepare an advocate's brief before deciding the merits").   This requirement necessarily follows from an understanding of the interplay between *Douglas* and *Anders*.   *Anders*, in essence, recognizes a limited exception to the requirement articulated in *Douglas* that indigent defendants receive representation on their first appeal as of right.   The exception is predicated on the fact that the Fourteenth Amendment — although demand-

---

[6] Obviously, a court cannot determine whether counsel is in fact correct in concluding that an appeal is frivolous without itself examining the record for arguable appellate issues.   In granting counsel's motion to withdraw, however, the Ohio Court of Appeals noted that it was deferring its independent review of the record for a later date.   See App. 37.

ing active and vigorous appellate representation of indigent criminal defendants—does not demand that States require appointed counsel to press upon their appellate courts wholly frivolous arguments. However, once a court determines that the trial record supports arguable claims, there is no basis for the exception and, as provided in *Douglas*, the criminal appellant is entitled to representation. The Court of Appeals' determination that arguable issues were presented by the record, therefore, created a constitutional imperative that counsel be appointed.

It bears emphasis that the right to be represented by counsel is among the most fundamental of rights. We have long recognized that "lawyers in criminal courts are necessities, not luxuries." *Gideon* v. *Wainwright*, 372 U. S. 335, 344 (1963). As a general matter, it is through counsel that all other rights of the accused are protected: "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive, for it affects his ability to assert any other rights he may have." Schaefer, Federalism and State Criminal Procedure, 70 Harv. L. Rev. 1, 8 (1956); see also *Kimmelman* v. *Morrison*, 477 U. S. 365, 377 (1986); *United States* v. *Cronic*, 466 U. S. 648, 654 (1984). The paramount importance of vigorous representation follows from the nature of our adversarial system of justice. This system is premised on the well-tested principle that truth—as well as fairness—is "'best discovered by powerful statements on both sides of the question.'" Kaufman, Does the Judge Have a Right to Qualified Counsel?, 61 A. B. A. J. 569, 569 (1975) (quoting Lord Eldon); see also *Cronic*, 466 U. S., at 655; *Polk County* v. *Dodson*, 454 U. S. 312, 318–319 (1981). Absent representation, however, it is unlikely that a criminal defendant will be able adequately to test the government's case, for, as Justice Sutherland wrote in *Powell* v. *Alabama*, 287 U. S. 45 (1932), "[e]ven the intelligent and educated layman has small and sometimes no skill in the science of law." *Id.*, at 69.

The need for forceful advocacy does not come to an abrupt halt as the legal proceeding moves from the trial to appellate stage. Both stages of the prosecution, although perhaps involving unique legal skills, require careful advocacy to ensure that rights are not forgone and that substantial legal and factual arguments are not inadvertently passed over. As we stated in *Evitts* v. *Lucey*, 469 U. S. 387 (1985):

> "In bringing an appeal as of right from his conviction, a criminal defendant is attempting to demonstrate that the conviction, with its consequent drastic loss of liberty, is unlawful. To prosecute the appeal, a criminal appellant must face an adversary proceeding that—like a trial—is governed by intricate rules that to a layperson would be hopelessly forbidding. An unrepresented appellant— like an unrepresented defendant at trial—is unable to protect the vital interests at stake." *Id.*, at 396.

By proceeding to decide the merits of petitioner's appeal without appointing new counsel to represent him, the Ohio Court of Appeals deprived both petitioner and itself of the benefit of an adversary examination and presentation of the issues.

### III

The State nonetheless maintains that even if the Court of Appeals erred in granting the motion to withdraw and in failing to appoint new counsel, the court's conclusion that petitioner suffered "no prejudice" indicates both that petitioner has failed to show prejudice under *Strickland* v. *Washington*, 466 U. S. 668 (1984), and also that any error was harmless under *Chapman* v. *California*, 386 U. S. 18 (1967). In either event, in the State's view, the Court of Appeals' affirmance of petitioner's conviction should stand.[7] We disagree.

---

[7] The Court of Appeals' finding of "no prejudice" is not free from ambiguity. The court wrote: "Because we have thoroughly examined the record and already considered the assignments of error raised in the other defend-

The primary difficulty with the State's argument is that it proves too much. No one disputes that the Ohio Court of Appeals concluded that the record below supported a number of arguable claims. Thus, in finding that petitioner suffered no prejudice, the court was simply asserting that, based on its review of the case, it was ultimately unconvinced that petitioner's conviction—with the exception of one count—should be reversed. Finding harmless error or a lack of *Strickland* prejudice in cases such as this, however, would leave indigent criminal appellants without any of the protections afforded by *Anders*. Under the State's theory, if on reviewing the bare appellate record a court would ultimately conclude that the conviction should not be reversed, then the indigent criminal appellant suffers no prejudice by being denied his right to counsel. Similarly, however, if on reviewing the record the court would find a basis for reversal, then the criminal defendant also suffers no prejudice. In either event, the criminal appellant is not harmed and thus has no basis for complaint. Thus, adopting the State's view would render meaningless the protections afforded by *Douglas* and *Anders*.

Nor are we persuaded that the Court of Appeals' consideration of the appellate briefs filed on behalf of petitioner's codefendants alters this conclusion. One party's right to representation on appeal is not satisfied by simply relying on representation provided to another party. See Tr. of Oral Arg. 28–29. To the contrary, "[t]he right to counsel guaranteed by the Constitution contemplates the services of an at-

---

ants' appeals we find appellant has suffered no prejudice in his counsel's failure to give a more conscientious examination of the record." App. 40–41. Not only does this language leave unclear whether the court relied on *Strickland*, *Chapman*, or both cases in concluding that petitioner was not entitled to relief, but it also appears to limit the finding of no prejudice to "counsel's failure to give a more conscientious examination of the record." The court did not recognize that petitioner's rights were also violated by its own omission in failing to appoint new counsel, and thus did not consider whether this separate violation was prejudicial.

torney devoted solely to the interests of his client. *Glasser* v. *United States*, 315 U. S. 60, 70 [(1942)]." *Von Moltke* v. *Gillies*, 332 U. S. 708, 725 (1948) (plurality opinion). A criminal appellant is entitled to a single-minded advocacy for which the mere possibility of a coincidence of interest with a represented codefendant is an inadequate proxy.[8] The State's argument appears to suggest, however, that there would rarely, if ever, be a remedy for an indigent criminal appellant who only receives representation to the extent a codefendant's counsel happens to raise relevant arguments in which they share a common interest. Again, the State's argument proves too much.

More significantly, the question whether the briefs filed by petitioner's codefendants, along with the court's own review of the record, adequately focused the court's attention on the arguable claims presented in petitioner's case is itself an issue that should not have been resolved without the benefit of an adversary presentation. An attorney acting on petitioner's behalf might well have convinced the court that petitioner's interests were at odds with his codefendants' or that petitioner's case involved significant issues not at stake in his codefendants' cases. Mere speculation that counsel would not have made a difference is no substitute for actual appellate advocacy, particularly when the court's speculation is itself unguided by the adversary process.[9]

---

[8] There is, of course, a significant distinction between joint representation on appeal, which is often appropriate, and the mere possibility of a coincidence of interest between represented and unrepresented criminal appellants.

[9] Although petitioner has been represented by counsel in this Court, we decline to sit in place of the Ohio Court of Appeals in the first instance to determine whether petitioner was prejudiced as to any appellate issue by reason of either counsel's failure to file an *Anders* brief or the court's failure to appoint new counsel. Cf. *Kimmelman* v. *Morrison*, 477 U. S. 365, 390 (1986). It would be particularly inappropriate for us to do so in a case raising both factual issues and questions of Ohio law.

Finally, it is important to emphasize that the denial of counsel in this case left petitioner completely without representation during the appellate court's actual decisional process. This is quite different from a case in which it is claimed that counsel's performance was ineffective. As we stated in *Strickland*, the "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." 466 U. S., at 692. Our decision in *United States* v. *Cronic*, likewise, makes clear that "[t]he presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial." 466 U. S., at 659 (footnote omitted). Similarly, *Chapman* recognizes that the right to counsel is "so basic to a fair trial that [its] infraction can never be treated as harmless error." 386 U. S., at 23, and n. 8. And more recently, in *Satterwhite* v. *Texas*, 486 U. S. 249, 256 (1988), we stated that a pervasive denial of counsel casts such doubt on the fairness of the trial process, that it can never be considered harmless error. Because the fundamental importance of the assistance of counsel does not cease as the prosecutorial process moves from the trial to the appellate stage, see *supra*, at 85, the presumption of prejudice must extend as well to the denial of counsel on appeal.

The present case is unlike a case in which counsel fails to press a particular argument on appeal, cf. *Jones* v. *Barnes*, 463 U. S. 745 (1983), or fails to argue an issue as effectively as he or she might. Rather, at the time the Court of Appeals first considered the merits of petitioner's appeal, appellate counsel had already been granted leave to withdraw; petitioner was thus entirely without the assistance of counsel on appeal. In fact, the only relief that counsel sought before the Court of Appeals was leave to withdraw, an action that can hardly be deemed advocacy on petitioner's behalf. Cf. *McCoy*, 486 U. S., at 439–440, n. 13. It is therefore in-

appropriate to apply either the prejudice requirement of *Strickland* or the harmless-error analysis of *Chapman*.[10]

The judgment of the Court of Appeals is accordingly reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE O'CONNOR, concurring.

I join the Court's opinion. I write separately to emphasize that nothing in the Court's opinion forecloses the possibility that a mere technical violation of *Anders* v. *California*, 386 U. S. 738 (1967), might be excusable. The violation in this case was not a mere technical violation, however, and on that understanding I concur.

CHIEF JUSTICE REHNQUIST, dissenting.

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." The Court has construed this language to include not only the right to assistance of counsel at trial, *Gideon* v. *Wainwright*, 372 U. S. 335 (1963), but also to the assistance of counsel on appeal. *Douglas* v. *California*, 372 U. S. 353 (1963). We have also held that the right conferred is not simply to the assistance of counsel, but also to the effective assistance of counsel, both at trial, see *United States* v. *Cronic*, 466 U. S. 648 (1984); *Strickland* v. *Washington*, 466 U. S. 668 (1984), and on appeal, see *Evitts* v. *Lucey*, 469 U. S. 387 (1985).

---

[10] A number of the Federal Courts of Appeals have reached a like conclusion when faced with similar denials of appellate counsel. See *United States ex rel. Thomas* v. *O'Leary*, 856 F. 2d 1011 (CA7 1988); *Freels* v. *Hills*, 843 F. 2d 958 (CA6 1988); *Jenkins* v. *Coombe*, 821 F. 2d 158 (CA2 1987), cert. denied, 484 U. S. 1008 (1988); *Cannon* v. *Berry*, 727 F. 2d 1020 (CA11 1984). But cf. *Sanders* v. *Clarke*, 856 F. 2d 1134 (CA8 1988); *Lockhart* v. *McCotter*, 782 F. 2d 1275 (CA5 1986), cert. denied, 479 U. S. 1030 (1987); *Griffin* v. *West*, 791 F. 2d 1578 (CA10 1986).

There is undoubtedly an equal protection component in the decisions extending the Sixth Amendment right to counsel on appeal; *Griffin* v. *Illinois*, 351 U. S. 12 (1956); *Douglas* v. *California, supra.* But we have also recognized that

> "[t]he duty of the State under our cases is not to dupli-cate the legal arsenal that may be privately retained by a criminal defendant in a continuing effort to reverse his conviction, but only to assure the indigent defendant an adequate opportunity to present his claims fairly in the context of the State's appellate process." *Ross* v. *Moffitt*, 417 U. S. 600, 616 (1974).

The Court today loses sight of this, and instead seeks to engraft onto our decision in *Anders* v. *California*, 386 U. S. 738 (1967), a presumption of prejudice when the appellate at-torney for an indigent does not exactly follow the procedure laid down in that case. Thus today's decision is added to the decision in *Anders* itself as a futile monument to the Court's effort to guarantee to the indigent appellant what no court can guarantee him: exactly the same sort of legal services that would be provided by suitably retained private counsel.

There are doubtless lawyers admitted to practice in the State of Ohio who, for a substantial retainer, would have filed a brief on behalf of petitioner in the Ohio Court of Appeals urging, with a straight face, all of the claims which petition-er's appointed attorney decided were frivolous. But nothing in the Constitution or in any rational concept of public policy should lead us to require public financing for that sort of an effort. The Court's opinion today justifies the *Anders* brief because it "serves the valuable purpose of assisting the court in determining both that counsel in fact conducted the re-quired detailed review of the case and that the appeal is in-deed so frivolous that it may be decided without an adversary presentation." *Ante*, at 81–82 (footnote omitted). These may be desirable purposes, but it seems to me that it stretches the Sixth Amendment a good deal to say that *it* re-quires these interests to be pursued in this manner. The

Sixth Amendment does not confer a right to have the court supervise counsel's assistance as it is rendered, but rather a right to have counsel appointed for the purpose of pursuing the appeal.

Here counsel rendered "assistance" and his performance must be reviewed for ineffectiveness and prejudice before any constitutionally mandated relief is in order. *Strickland, supra,* at 687–696. Counsel states—and we have no reason to disbelieve him—that he conscientiously reviewed the record and "found no errors requiring reversal, modification and/or vacation of appellant's jury trial convictions and/or the trial court's sentence in [his case]." App. 35. As it turned out, that determination was incorrect, but this fact does not mean that counsel did not employ his legal talents in the service of his client. Whether or not this evaluative process constituted "assistance" cannot be affected by its conclusion. "[T]he canons of professional ethics impose limits on permissible advocacy. It is the obligation of any lawyer—whether privately retained or publicly appointed—not to clog the courts with frivolous motions or appeals." See *Polk County* v. *Dodson,* 454 U. S. 312, 323 (1981).

This is not to say that an attorney's erroneous decision to withdraw is necessarily adequate assistance of counsel. That is to be judged under *Strickland.* Of course, counsel may protect himself from collateral review of the effectiveness of his performance by following the safe-harbor procedures outlined in *Anders.* As described by the Court today, the filing of an *Anders* brief creates a strong presumption that counsel has diligently worked on the case and that the court was correct in assessing the frivolousness of the appeal when it allowed withdrawal. *Anders* may well outline a prudent course to follow for the appointed attorney who wishes to withdraw from a frivolous case. But if counsel declines to follow it, the basic constitutional guarantee of effective assistance remains the underlying standard by which his conduct should be judged.

In this case, petitioner was one of a group of three men who broke into a dwelling and robbed, raped, and otherwise sexually assaulted the adult inhabitants. It cannot be questioned that petitioner and his codefendants stood in substantially the same position in defending against the charges.* The appellate court considered the briefs of petitioner's codefendants and conducted its own review of the record. It ultimately reversed one of petitioner's convictions as a result. It also considered but decided against reversing another. Although the "coincidence of interest with a represented codefendant," *ante,* at 87, is not a substitute for the assistance of counsel, it certainly may eliminate the prejudice of poor representation if it brings to the court's attention the meritorious arguments that appointed counsel failed to make. In this case, the merits briefs filed on behalf of his codefendants were substantially *more* beneficial to petitioner than an *Anders* brief from his own attorney. The appellate court performed its duty in utilizing the available advocate's papers on petitioner's behalf and in exercising its independent judgment of the record. After doing so, it concluded that petitioner had not suffered prejudice from his counsel's withdrawal without filing an *Anders* brief. On these facts, I think that conclusion plainly correct.

---

*The Court asserts that "[a]n attorney acting on petitioner's behalf might well have convinced the court that petitioner's interests were at odds with his codefendants' . . . ." *Ante,* at 87. This appears to be pure speculation. Nothing in the papers filed in this Court, nor in the majority opinion, suggests any theory of how this might be done or why, if such a conflict existed, the court could not discern it from its own review of the record.