**Jalani A. BAKARI, Petitioner,**

v.

**Howard BEYER, et al., Respondents.**

**Civ. A. No. 93–3238 (AMW).**

United States District Court,
D. New Jersey.

Oct. 6, 1994.

Jalani A. Bakari, petitioner pro se.

Elizabeth A. Duelly, Asst. Prosecutor, Director, Appellate Section, Newark, NJ, for respondents.

## OPINION

WOLIN, District Judge.

Petitioner, Jalani Bakari a/k/a Alonzo Koon ("Bakari"), currently confined at a New Jersey State Prison in Trenton, New Jersey, filed a petition for a writ of habeas corpus relief under Title 28 section 2255 of the United States Code.[1] Having exhausted all available state court remedies, petitioner asserts that he was denied his Sixth Amendment right to counsel during his first appeal. Respondents argue that petitioner made a knowing and voluntary waiver of counsel. After a careful review of the entire record, the Court has determined that petitioner's application should be granted.

## BACKGROUND

### A. The Facts

Based on the record of petitioner's trial and appeals, the Court gleans the following factual information. Petitioner was found guilty of the armed robbery of Renaldo Serrano and the armed robbery and kidnapping of Serrano's fiance, Miriam Soto.

On October 3, 1986, at about 11:00 p.m., petitioner and his accomplice, Willie Glover, approached Mr. Serrano and Ms. Soto as they sat in their parked car talking. Petitioner pulled out a gun, held it against Mr. Serrano's neck and took eight dollars from Mr. Serrano's wallet. Petitioner then ordered Mr. Serrano to walk away from the car without looking back. Meanwhile, Glover ordered Ms. Soto out of the car, made her walk about twenty-five or thirty feet away from the car and then returned her to the backseat of the car. Petitioner then drove off with Glover in the front seat and Ms. Soto in the backseat. As they were driving Glover searched inside Ms. Soto's blouse and pants. While Glover was distracted searching Ms. Soto's pocketbook, she tried to hide her jewelry under the seat. Her movements distracted petitioner who told her to move into the front seat where he could watch her. As she was attempting to move into the front seat, Ms. Soto escaped and fled from the car.

Both Mr. Serrano and Ms. Soto immediately contacted the police. On October 11, 1986, the police stopped Glover, who was driving Ms. Soto's car. At this time, Glover was charged only with a motor vehicle offense and released. On October 25, 1986, Mr. Serrano and Ms. Soto identified Glover at a photo array. Glover was arrested on October 28, 1986. At the time of his arrest, Glover made a statement in which he admitted his own participation in the robbery and identified petitioner as his partner in the robbery. A complaint was signed against petitioner on October 29, 1986, and he was arrested on November 14, 1986.

On January 9, 1987, an Essex County Grand Jury returned Indictment No. 332–1–87, charging Glover and petitioner with first degree robbery (counts one and two); first degree kidnapping (count three); third degree aggravated assault (count four); third degree criminal sexual contact (count five); third degree unlawful possession of a weapon (count six); and second degree possession of weapon for an unlawful purpose (count seven).

---

**1.** Section 2255 provides:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, ... or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Petitioner was tried before a jury on March 29 and March 30, 1988, in the courtroom of the Honorable John J. Dios. Petitioner was represented by the Office of the Public Defender during his trial.

The jury found petitioner guilty of the charges contained in counts one, two, three, four, six and seven of the indictment. Petitioner was acquitted on count five of the indictment.

On May 5, 1988, petitioner was sentenced to an aggregate term of thirty-six years with sixteen years of parole ineligibility. A total of $650.00 fines was imposed.

On June 9, 1988, a notice of appeal on behalf of petitioner was filed *nunc pro tunc* with the Superior Court of New Jersey, Appellate Division. Petitioner was assigned counsel from the Office of the Public Defender to represent him in his first appeal as of right.

At the outset of his appeal, petitioner expressed dissatisfaction with counsel from the Office of the Public Defender. Specifically, petitioner was aggrieved that briefs were filed without prior consultation with him and that he was not sent a copy of his trial transcript. As a result, petitioner expressed orally and in writing that he did not wish to be represented by the Office of the Public Defender. (Certification of Diane Toscano, sworn to February 22, 1989 (Ra 30–31)). As a result, the Office of the Public Defender filed a motion to be withdrawn as counsel on February 22, 1989. Without holding any hearing on the matter, the appellate division granted the motion on March 22, 1989. Petitioner was then ordered by the appellate division to perfect his appeal either *pro se* or with substitute counsel within 30 days after the entry of the Order.

Petitioner proceeded to appeal his conviction *pro se* in the appellate division, which affirmed his conviction on February 14, 1990. Petitioner then sought certification *pro se* before the New Jersey Supreme Court, which denied his petition. Petitioner also filed a motion for reconsideration *pro se* with the New Jersey Supreme Court in which he claimed that his Sixth Amendment right to counsel had been violated because he did not knowingly and voluntarily waive his right to counsel. Petitioner's motion for reconsideration was denied without comment on October 1, 1991.

## DISCUSSION

■ Petitioner argues he was denied his Sixth Amendment right to counsel when the appellate division allowed the Office of the Public Defender to withdraw as counsel and did not appoint substitute counsel, requiring him to pursue his appeal *pro se.*[2] The Court also recognizes that the failure to provide counsel is a violation of the habeas corpus statute, which recognizes that state proceedings are not "full and fair" if "the applicant was an indigent and the state court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the state court proceeding." 28 U.S.C. § 2254(d)(2), (3), (5)–(7).

■ There is no question that the State has a duty to provide an indigent defendant with effective assistance of counsel through his first appeal. In *Douglas v. California,* 372 U.S. 353, 358, 83 S.Ct. 814, 817, 9 L.Ed.2d 811 (1963), the Court held: "[W]here the merits of the one and only appeal an indigent has of right are decided without benefit of counsel, we think an unconstitutional line has been drawn between rich and poor." The Court held that the right to counsel on a first appeal as of right was commanded by the Fourteenth Amendment to the Constitution of the United States. *Id.* at 358, 83 S.Ct. at 817.

The Supreme Court has repeatedly reaffirmed the right to counsel during a first appeal as of right:

> In bringing an appeal as of right from his conviction, a criminal defendant is attempting to demonstrate that the conviction, with its consequent drastic loss of liberty, is unlawful. To prosecute the appeal, a criminal appellant must face an adversary proceeding that—like a trial—is governed by intricate rules that to a layperson would

**2.** This Court believes it can decide the issue of waiver of counsel without the benefit of additional discovery and, therefore, the Court hereby denies petitioner's pending motion for discovery.

be hopelessly forbidding. An unrepresent-ed appellant—like an unrepresented defen-dant—is unable to protect the trial inter-ests at stake.... A first right of appeal therefore is not adjudicated with due pro-cess of law if the appellant does not have the effective assistance of an attorney. *Evitts v. Lucey,* 469 U.S. 387, 396, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985). *See also, Penson v. Ohio,* 488 U.S. 75, 85, 109 S.Ct. 346, 352, 102 L.Ed.2d 300 (1988) ("The need for forceful advocacy does not come to an abrupt halt as the legal proceeding moves from the trial to the appellate stage."); N.J.R.Cr.P. 3:22–6 (right to counsel on ap-peal).

■ Petitioner also has a Constitutional right under the Sixth Amendment to proceed *pro se. Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). However, it is well-established that in order to invoke the Sixth Amendment right to self-representation, petitioner's waiv-er of counsel must be both "knowing and voluntary." *Id.; Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *State v. Crisafi,* 128 N.J. 499, 608 A.2d 317 (1992), *cert. denied,* 130 N.J. 398, 614 A.2d 620 (1992); *State v. Buonadonna,* 122 N.J. 22, 583 A.2d 747 (1991); *State v. Davis,* 45 N.J. 195, 212 A.2d 19 (1965).

■ The State claims petitioner made a "knowing and voluntary" waiver of his right to counsel on appeal. The burden of proving waiver is on the State and the presumption is against waiver. As the Supreme Court held: "[C]ourts indulge every reasonable presump-tion against waiver of fundamental constitu-tional rights." *Id.* 304 U.S. at 464, 58 S.Ct. at 1023; *State v. Wiggins,* 158 N.J.Super. 27, 385 A.2d 318 (1978) ("Every reasonable pre-sumption against waiver of constitutional rights should be indulged.").

The first problem we encounter in this case is that there is no evidence that petition-er ever requested to proceed *pro se.* Diane Toscano, a public defender, filed a certifica-tion in support of the motion to withdraw as counsel. Ms. Toscano states: "Defendant has advised me, verbally and in writing, that he does not wish to be represented by the Office of the Public Defender. He wishes to keep open the option of proceeding *pro se,* and he has requested that I send him the transcripts and all other documents in his file." (Ra 30–31).

■ Petitioner's expression of dissatisfac-tion with the Office of the Public Defender and his desire to "keep open the option of proceeding *pro se* " can hardly be construed as an unequivocal statement that petitioner desired to proceed *pro se.* More important-ly, even assuming *arguendo,* that petitioner did manifest an unequivocal desire to pro-ceed *pro se,* there is absolutely nothing in the record to indicate his request was "knowing and voluntary." *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541.

■ Recognizing the enormous impor-tance and role the attorney plays in criminal litigation, the U.S. Supreme Court has im-posed rigorous prophylactic measures that must be employed before a defendant can be deemed to have made a "knowing and volun-tary" waiver of his right to counsel. Specifi-cally, the Supreme Court has commanded that courts engage in a discussion in open court with the defendant in order to make certain he is aware of the grave difficulties in proceeding without counsel. *Patterson v. Il-linois,* 487 U.S. 285, 292–93, 296, 108 S.Ct. 2389, 2394–95, 2397, 101 L.Ed.2d 261 (1988). As a result, the Supreme Court has charac-terized the role of the Court in determining whether or not waiver is knowing and volun-tary as a "serious and weighty responsibili-ty." *Von Moltke v. Gillies,* 332 U.S. 708, 723–24, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948). To properly discharge this duty:

[A] judge must investigate as long and as thoroughly as the circumstances of the case before him demand.... To be valid such waiver must be made with an appre-hension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments there-under, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to the broad understanding of the whole matter.

*Id.*

While there is no exact script that must be read to the defendant, the Supreme Court

requires that the Court to discuss with the defendant "the dangers and disadvantages of self-representation so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541; *State v. Davis,* 45 N.J. at 199, 212 A.2d 19 (finding defendant should be warned of the consequences of proceeding *pro se* ).

The requirement that the Court discuss waiver of counsel in open court with the defendant is well-established. *See United States v. Ant,* 882 F.2d 1389, 1393–94 (9th Cir.1989); *United States v. Berkowitz,* 927 F.2d 1376, 1383 (7th Cir.1991); *Stano v. Dugger,* 921 F.2d 1125, 1144–45 (11th Cir.1991); *United States v. Charria,* 919 F.2d 842, 847 (2d Cir.1990); *Government of Virgin Islands v. James,* 934 F.2d 468 (3d Cir.1991).

■ The New Jersey Supreme Court also has mandated that the court discuss waiver in open court. "It is for the court to determine whether an accused has knowingly and intelligently waived that right and to establish waiver on the record." *State v. Crisafi,* 128 N.J. at 509, 608 A.2d 317. *See also State v. Buonadonna* 122 N.J. at 35, 583 A.2d 747 (waiver of right to counsel "necessitates an on-the-record inquiry of the defendant by the trial court to insure waiver is made knowingly and voluntarily").

Courts rarely find there has been a "knowing and intelligent" waiver absent a specific inquiry by the Court into the defendant's intention or an "unusual fact situation in which the background and experience of the defendant in legal matters [is] apparent from the record." *Hendricks v. Zenon,* 993 F.2d 664, 670 (9th Cir.1993) (finding due process violated when a criminal defendant was not represented by counsel during a first appeal as of right and when there was no record to indicate the appellate court had investigated whether defendant had made a knowing and voluntary waiver of counsel).

As evidence of a knowing and voluntary waiver, the State points to the fact that petitioner told the Public Defender orally and in writing that he did not want to be represented by that Office. In addition, the State points to the fact that the defendant failed to file a motion for substitute counsel.

■ Petitioner's statements to the Public Defender are insufficient to prove a knowing and voluntary waiver. The law requires a warning about the dangers of self-representation from the Court. "A defendant's statement that he is aware of his constitutional right to counsel and desires to waive it does not relieve the judge of responsibility to insure waiver of counsel is knowledgeable." *McMahon v. Fulcomer,* 821 F.2d 934 (3d Cir.1987).

■ Similarly, petitioner's failure to file a motion for substitute counsel is insufficient to prove petitioner made a knowing and voluntary waiver of counsel. This Court cannot assume that a *pro se* defendant is aware of the intricacies of state criminal procedure. It was incumbent on the appellate division to inform petitioner of his right to counsel and the procedural mechanism he could use to get counsel.

Moreover, the burden was on the Office of the Public Defender to file the motion for substitute counsel for petitioner pursuant to New Jersey Rule 1:11–2 which states:

After the entry of a plea in a criminal action or after the pretrial conference or the fixing of a trial date, whichever is earlier in a civil action, an attorney may withdraw from the action only by leave of court on written notice to all parties. Prior to such time, an attorney may withdraw without leave of court upon the client's consent provided a substitution of attorney is filed naming the substituted attorney or indicating the client will appear *pro se.* If the client will appear *pro se,* the withdrawing attorney shall file the substitution.

The Public Defender failed to file the substation as required by Rule 1:11–2. This action left the defendant ignorant and alone on his appeal.

In the present case, there is absolutely no indication from the record that the appellate division informed petitioner of the dangers of self-representation. *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541. Nor did the appellate division make any inquiry or direct any inquiry by the trial court of petitioner in an effort to determine whether his waiver of

counsel was knowing and voluntary. In fact, there is no indication that the appellate division did anything more than read the motion from the Office of the Public Defender before forcing petitioner to proceed *pro se*.

Nothing in the record reveals an unusual fact situation that would warrant deviating from the required procedure to determine if petitioner's waiver was knowing and voluntary. There is nothing in petitioner's background or prior experience that would demonstrate that petitioner made a knowing and voluntary waiver.

## CONCLUSION

The appellate division's dismissal of petitioner's counsel purely on the basis of a written motion was clearly inadequate. The appellate division had a duty to "investigate as long and as thoroughly as the circumstances of the case" require to determine if petitioner's waiver of counsel was "knowing and voluntary" or direct the trial court to make such inquiry. *Von Moltke v. Gillies*, 332 U.S. at 723–24, 68 S.Ct. at 323–24. The appellate division had a duty to ensure that petitioner was informed of the dangers of self-representation and the procedural mechanism for appointing new counsel.[3] Accordingly, the Court will grant petitioner's writ and remand this case for a new appeal.

An appropriate order is attached.

### *ORDER*

In accordance with an Opinion filed herewith

It is on this 6th day of October, 1994;

ORDERED that petitioner's writ of habeas corpus is hereby granted; and it is further

ORDERED that petitioner's application for discovery is denied.

---

**3.** Because this case comes to us by way of habeas corpus, we decline to establish any specific procedures that must be followed by a court when an indigent criminal appellant tries to either waive his right to counsel or secure substitute counsel. We are confident that the state appellate division will easily determine methods to cope with this problem that will satisfy the substantive command of the Sixth Amendment as interpreted by the Supreme Court.