**Jalani A. BAKARI, Petitioner,**

v.

**Howard BEYER, et al., Respondents.**

**Civ. A. No. 93–3238 (AMW).**

United States District Court,
D. New Jersey.

Dec. 2, 1994.

Jalani A. Bakari, pro se.

Hillary L. Brunnell, Legal Asst., Newark, NJ, for respondents.

## *OPINION*

WOLIN, District Judge.

Pending before this Court is respondents' motion for reconsideration of this Court's order dated October 13, 1994. For the rea-

sons stated below, the Court will deny respondents' motion.

## BACKGROUND

Petitioner, Jalani Bakari also known as Alonzo Koon ("Bakari"), currently confined at a New Jersey State Prison in Trenton, New Jersey, filed a petition for a writ of habeas corpus relief under Title 28 section 2255 of the United States Code.[1] Having exhausted all available state court remedies, petitioner asserted that he was denied his right to counsel during his first appeal.

### A. Procedural History

On January 9, 1987, an Essex County Grand Jury returned Indictment No. 332–1–87, charging petitioner and his accomplice with first degree robbery (counts one and two); first degree kidnapping (count three); third degree aggravated assault (count four); third degree criminal sexual contact (count five); third degree unlawful possession of a weapon (count six); and second degree possession of weapon for an unlawful purpose (count seven).[2]

Petitioner was tried before a jury on March 29 and March 30, 1988, in the courtroom of the Honorable John J. Dios. Petitioner was represented by the Office of the Public Defender during his trial. The jury found petitioner guilty of the charges contained in counts one, two, three, four, six and seven of the indictment. Petitioner was acquitted on count five of the indictment. On May 5, 1988, petitioner was sentenced to an aggregate term of thirty-six years with sixteen years of parole ineligibility. A total of $650.00 fines was imposed.

On June 9, 1988, a notice of appeal on behalf of petitioner was filed *nunc pro tunc* with the Superior Court of New Jersey, Appellate Division. Petitioner was assigned counsel from the Office of the Public Defend-

er to represent him in his first appeal as of right.

At the outset of his appeal, petitioner expressed dissatisfaction with counsel from the Office of the Public Defender. Specifically, petitioner was aggrieved that briefs were filed without prior consultation with him·and that he was not sent a copy of his trial transcript. As a result, petitioner expressed orally and in writing that he did not wish to be represented by the Office of the Public Defender. (Certification of Diane Toscano, sworn to February 22, 1989 (Ra 30–31)). As a result, the Office of the Public Defender filed a motion to be withdrawn as counsel on February 22, 1989. Without holding any hearing on the matter, the Appellate Division granted the motion on March 22, 1989. Petitioner was then ordered by the Appellate Division to perfect his appeal either *pro se* or with substitute counsel within thirty days after the entry of the Order.

Petitioner proceeded to appeal his conviction *pro se* in the Appellate Division, which affirmed his conviction on February 14, 1990. Petitioner then sought certification *pro se* before the New Jersey Supreme Court, which denied his petition. Petitioner also filed a motion for reconsideration *pro se* with the New Jersey Supreme Court in which he claimed that his Sixth Amendment right to counsel had been violated because hid did not knowingly and intelligently waive his right to counsel on appeal. Petitioner's motion for reconsideration was denied without comment on October 1, 1991.

### B. Petitioner's Writ

Petitioner filed this writ of habeas corpus arguing that he was denied his right to counsel on appeal. Respondents argue that petitioner made a knowing and intelligent waiver of counsel. After a careful review of the entire record, this Court determined that the record was insufficient to support a finding

---

1. Section 2255 provides:

 A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, ... or is otherwise sub-

ject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

2. A detailed recital of the facts underlying the indictment appears in this Court's October 6, 1994, Opinion, 863 F.Supp. 192 (D.N.J.1994).

that petitioner had made a knowing and intelligent waiver of his right to counsel on first appeal. Therefore, this Court conditionally granted petitioner's writ and ordered the State of New Jersey to either immediately release the petitioner or reinstate his appeal within ninety (90) days wherein petitioner will be given the benefit of appointed counsel unless he knowingly and intelligently elects to proceed *pro se*. The Court further ordered that the conditional writ shall be stayed pending appeal.

In reaching its conclusion the Court relied on *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and its progeny, which establish that the waiver of a constitutional rights must be both "knowing and intelligent." *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975); *State v. Crisafi*, 128 N.J. 499, 608 A.2d 317 (1992), *cert. denied*, 130 N.J. 398, 614 A.2d 620 (1992); *State v. Buonadonna*, 122 N.J. 22, 583 A.2d 747 (1991); *State v. Davis*, 45 N.J. 195, 212 A.2d 19 (1965).

Respondents argued that petitioner's statements to the Public Defender evidenced a knowing and intelligent waiver of the right to counsel. In addition, respondents relied on the fact that petitioner did not file for a substitution of attorney. This Court rejected both arguments.

This Court held that statement made by the petitioner to the Public Defender did not indicate that petitioner wanted to proceed *pro se*. Diane Toscano, a public defender, filed a certification in support of the motion to withdraw as counsel. Ms. Toscano stated: "Defendant has advised me, verbally and in writing, that he does not wish to be represented by the Office of the Public Defender. He wishes to keep open the option of proceeding *pro se*, and he has requested that I send him the transcripts and all other documents in his file." (Ra 30–31).

Petitioner's expression of dissatisfaction with the Office of the Public Defender and his desire to "keep open the option of proceeding *pro se*" can hardly be construed as an unequivocal statement that petitioner desired to proceed *pro se*. More importantly, even assuming *arguendo*, that petitioner did manifest an unequivocal desire to proceed

*pro se*, there is absolutely nothing in the record to indicate his request was "knowing and intelligent." *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541.

Similarly, this Court held that petitioner's failure to file a motion for substitute counsel was insufficient to prove petitioner made a knowing and intelligent waiver of counsel. This Court cannot assume that a *pro se* defendant is aware of the intricacies of state criminal procedure.

As a result, the Court concluded: "There is absolutely no indication from the record that the Appellate Division informed petitioner of the dangers of self-representation. *Faretta* at 835, 95 S.Ct. at 2541. Nor did the Appellate Division make any inquiry or direct any inquiry by the trial court of petitioner in an effort to determine whether his waiver of counsel was knowing and voluntary. In fact, there is no indication that the Appellate Division did anything more than read the motion from the Office of the Public Defender before forcing petitioner to proceed *pro se*."

The Court also held: "Nothing in the record reveals an unusual fact situation that would warrant deviating from the required procedure to determine if petitioner's waiver was knowing and voluntary. There is nothing in petitioner's background or prior experience that would demonstrate that petitioner made a knowing and voluntary waiver." The Court concluded that the Appellate Division's dismissal of petitioner's counsel purely on the basis of a written motion was inadequate. The Appellate Division had a duty to "investigate as long and as thoroughly as the circumstances of the case" require to determine if petitioner's waiver of counsel was "knowing and voluntary" or direct the trial court to make such inquiry. *Von Moltke v. Gillies*, 332 U.S. 708, 723–24, 68 S.Ct. 316, 323–24, 92 L.Ed. 309 (1948).

For the first time, in its motion for reconsideration, respondents argue that the right to counsel on appeal is rooted in the due process clause and the equal protection clause and that there is no authority "for the proposition that waiver of equal protection and due process right to representation on

appeal requires the same procedural mechanism as those employed for Sixth Amendment waivers of counsel." (Respondents Br. at 3.) Respondents base their argument on dicta in *Ross v. Moffitt,* 417 U.S. 600, 609, 94 S.Ct. 2437, 2443, 41 L.Ed.2d 341 (1974), which holds that the right to counsel on appeal is rooted in the right to due process and the right to equal protection of the laws. Essentially, respondents assert that it is easier for a criminal defendant to waive his rights to due process and equal protection under the law than it is to waive his Sixth Amendment right to counsel. As discussed herein, respondents argument is unsupported by either reason or authority.

## DISCUSSION

### I. Standard for Reconsideration

 Motions to reconsider or reargue under Rule 12(I) are granted "very sparingly." *Maldonado v. Lucca,* 636 F.Supp. 621, 630 (D.N.J.1986). A party "must show more than a disagreement with the court's decision." *Panna v. Firstrust Savings Bank,* 760 F.Supp. 432, 435 (D.N.J.1991). A motion for reconsideration is improper when it is used "to ask the Court to rethink what it had already thought through—rightly or wrongly." *Carteret Sav. Bank F.A. v. Shushan,* 721 F.Supp. 705, 706 (D.N.J.1989), *modified,* 919 F.2d 225 (3d Cir.1990) (mere "recapitulation of the cases and arguments considered by this Court before rendering its initial decision" did not warrant reargument.)

In addition, Local Rule 12(I) has been interpreted consistently to restrict review to facts and legal arguments properly presented to the Court at the time the motion on which reargument is sought was initially decided and overlooked by the Court. Thus, efforts to expand the record to include legal arguments not originally before the court on a motion for reargument have been rejected. *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.,* 680 F.Supp. 159, 162 (D.N.J. 1988); *Pelham v. United States,* 661 F.Supp. 1063, 1065 (D.N.J.1987).

 Respondents have not met their burden of demonstrating any facts or case law which this Court overlooked in rendering its

Opinion. In fact, respondents seek to advance on reconsideration a wholly new legal argument not put forth earlier in this case. The case law relied on by respondents is two decades old and was certainly available to respondents when preparing their arguments in this case. *See e.g. Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). The case law relied on by respondents was not overlooked by the Court; it was never presented to the Court. Local Rule 12(I) does not allow the court to consider case law and legal arguments not originally advanced by respondents. As a result, this Court finds respondents' motion for reconsideration is procedurally defective. However, due to the importance of the issues at stake in this litigation, the Court will address the substance of respondents' argument.

### II. Respondents' Hierarchial Ranking of Constitutional Rights

 Respondents argue that the "waiver of equal protection and due process right to representation on appeal [does not] require[ ] the same procedural mechanism as those employed for Sixth Amendment waivers of counsel." (Respondents Br. at 3.) Respondents base their argument on dicta in *Ross v. Moffitt,* 417 U.S. at 609, 94 S.Ct. at 2443, which holds that the right to counsel on appeal is rooted in the right to due process and the right to equal protection of the laws and not the Sixth Amendment. Essentially, respondents assert that it is easier for the petitioner to waive his right to due process and equal protection under the law than it is to waive his Sixth Amendment right to counsel.

In making their argument, respondents ignore five decades of Supreme Court jurisprudence regarding waiver of constitutional rights. The Supreme Court has defined waiver as "an intelligent relinquishment or abandonment of a known right or privilege." *Johnson,* 304 U.S. at 464, 58 S.Ct. at 1023. And the Court has held that defendant must act "knowingly and intelligently" when waiving a constitutional right. *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541.

The Supreme Court has repeatedly warned that courts must "indulge every reasonable presumption against waiver." *Aetna Ins. Co. v. Kennedy,* 301 U.S. 389, 57 S.Ct. 809, 81 L.Ed. 1177 (1937). The Supreme Court also has cautioned that courts "should not presume acquiescence in the loss of fundamental rights." *Ohio Bell Tel. Co. v. Public Utilities Comm'n,* 301 U.S. 292, 307, 57 S.Ct. 724, 732, 81 L.Ed. 1093 (1937). In *Carnley v. Cochran,* the Supreme Court held:

> Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandably rejected the offer. Anything less is not waiver.

369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962).

Respondents fail to cite any authority to support their argument that it is easier to waive the right to due process and equal protection than it is to waive the right to counsel. Respondents cite no authority for their hierarchial ranking of constitutional rights because there is no authority.

Indeed, this Court's own research has found that the requirement that waiver of constitutional rights be knowing and intelligent is not limited to the Sixth Amendment right to counsel. Rather, the Supreme Court has applied the waiver standard set forth in *Johnson* to a plethora of constitutional rights.

For example, the *Johnson* standard has been held to apply to a defendant's waiver of his right to a jury trial. *Adams v. McCann,* 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942). Similarly, the *Johnson* standard for waiver has been held to apply to a defendant's waiver of his Fifth Amendment right to be free of double jeopardy. *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). And, in *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942) the Supreme Court applied *Johnson* standard to a defendant's right to waive

a conflict of interest with regard to his attorney.

The fallacy of respondents' argument that the waiver of a due process right is not subject to the *Johnson* standard is apparent when one recognizes that the right to a speedy trial and the right to confront witnesses are rooted in due process, as well as the Sixth Amendment. *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1920).[3] Yet, the Supreme Court has applied the *Johnson* standard to the waiver of the right to a speedy trial, *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and to waiver of the right to confront witnesses, *Brookhart v. Janis,* 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966).

Most importantly, the *Johnson* standard has been held to apply at every "critical stage" of a criminal proceeding, including significant pre-trial proceedings. In *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), the Supreme Court held: "This strict standard applies equally to an alleged waiver of the right to counsel whether at trial or at a critical stage of pre-trial proceedings." This Court's extension of the *Johnson* standard to a defendant's waiver of counsel during his first appeal of right comports with the intent and reasoning of *Brewer.* The Court's decision also comports with the Supreme Court's affirmation of the importance of counsel during a defendant's first appeal of right in *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), and *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). In *Evitts,* the Supreme Court held:

> In bringing an appeal as of right from his conviction, a criminal defendant is attempting to demonstrate that the conviction, with its consequent drastic loss of liberty, is unlawful. To prosecute the appeal, a criminal appellant must face an adversary proceeding that—like a trial—is governed by intricate rules that to a layperson would be hopelessly forbidding. An unrepresented appellant—like an unrepresented defen-

---

3. In *Washington,* the Supreme Court held: "[D]ue Process requires that the accused have the assistance of counsel for his defense, that he

be confronted with the witnesses against him, and that he have the right to a speedy and public trial." 388 U.S. at 18, 87 S.Ct. at 1922.

dant—is unable to protect the trial interests at stake.... A first right of appeal therefore is not adjudicated with due process of law if the appellant does not have the effective assistance of an attorney.

469 U.S. at 396, 105 S.Ct. at 836. *See also, Penson v. Ohio,* 488 U.S. 75, 85, 109 S.Ct. 346, 352, 102 L.Ed.2d 300 (1988) ("The need for forceful advocacy does not come to an abrupt halt as the legal proceeding moves from the trial to the appellate stage."); N.J.R.Cr.P. 3:22–6 (right to counsel on appeal).

As the Supreme Court held in *Schneckloth v. Bustamonte,* 412 U.S. 218, 242, 93 S.Ct. 2041, 2055, 36 L.Ed.2d 854 (1973):

> A strict standard of waiver has been applied to those rights guaranteed to a criminal defendant to insure he will be accorded the greatest possible opportunity to utilize every facet of the constitutional model of a fair criminal trial. Any trial conducted in derogation of that model leaves open the possibility that the trial reached an unfair result because all the protections specified in the Constitution were not provided. A prime example is the right to counsel. For without that right a wholly innocent accused faces the real and substantial danger that simply because of his lack of expertise he may be convicted.[4]

When *Schneckloth* is read in conjunction with *Douglas* and *Evitts,* there can be no doubt that a defendant's waiver of counsel on appeal must be both "knowing and intelligent." Anything less leaves open the possibility that the defendant was denied his constitutional right to counsel on appeal.

In light of the importance of the right to counsel during a first appeal as of right, this Court finds no merit to respondents' argument that Court should abandon "the same procedural mechanism as those employed for Sixth Amendment waivers of counsel." (Respondents Brief at 3). Procedural safeguards, such as the requirement that the defendant's waiver of his constitutional rights be knowing and intelligent, exist to protect the rights of criminal defendants and, instru-

mentally, the rights of all citizens. These safeguards insure that constitutional mandates are fulfilled. This Court will not denigrate these safeguards.

## CONCLUSION

For the foregoing reasons, the respondents' motion for reconsideration is denied.

An appropriate order is attached.

---

4. The Supreme Court's discussion in *Schneckloth* of waiver of rights under the Fourth Amendment is inapposite to this case.