This matter now comes on for consideration of an appeal from a judgment entered by the Lawrence County Common Pleas Court revoking community control sanctions and imposing prison sentences upon Larry D. Gilliam, defendant below and appellant herein, with respect to previous convictions on two (2) counts of cocaine possession, in violation of R.C. 2925.11, and one (1) count of assaulting a police officer, in violation of R.C.2903.13. Pursuant to Anders v. California (1967), 386 U.S. 738, appellant's appointed counsel has advised this Court that, following a thorough and conscientious review of the record, she can discern no "meritorious appealable issue" upon which an assignment of error could be predicated. She has requested leave to withdraw and, in accordance with Anders, supra, has accompanied her request with a brief referring to those portions of the record that might arguably support an appeal. Counsel posits the following possible assignment of error:
 "THE TRIAL COURT ERRONEOUSLY AND INAPPROPRIATELY FAILED TO CONSIDER THE DEFENDANT'S LACK OF A PRIOR RECORD AND HIS RECOVERY FROM DRUG ABUSE IN SENTENCING THE DEFENDANT HEREIN."[1]
The record reveals the following facts pertinent to this appeal. On or about November 19, 1997, the Lawrence County Grand Jury returned an indictment charging appellant with two (2) counts of cocaine possession in violation of R.C. 2925.11
(C)(4)(a)(b), one (1) count of assaulting a "peace officer" in violation of R.C. 2903.13(C)(3) and one (1) count of resisting arrest in violation of R.C. 2921.33.[2] He initially pled "not guilty" to these offenses but, later, changed his mind and entered a plea of "guilty" to all four (4) counts in the indictment. On January 5, 1998, the lower court entered judgment accepting those pleas, finding him guilty of the specified offenses and sentencing him to "three (3) years community sanctions on each count, which shall include six (6) months in the Lawrence County Jail." He was ordered to report to the jail for the six (6) month term of incarceration no later than 9:00 AM on January 15, 1998. Appellant also executed a "Conditions of Probation" form which outlined inter alia the following terms of his sentence:
 "2B) Probationer shall not be away from his/her residence in excess of one week without prior permission of this department.
* * *
 7.) Probationer shall immediately report any change in residence to this Probation Department.
* * *
 14.) Probationer shall not use, own, possess, have immediate control of, any type of controlled substance, drug or narcotic, except on prescription by a physician.
* * *
 16.) Probationer agrees to undergo urinalysis drug testing throughout the probation period. A positive test may result in immediate incarceration or revocation of probation. * * *"
On February 2, 1998, the State filed a motion to revoke appellant's "probation."[3] It was alleged therein that appellant had reported to the Lawrence County Jail as ordered on January 15, 1998, but was turned away due to "overcrowded conditions." He was told to report to the jail "each and every day" until he was admitted for incarceration and, if he was turned away again, to report to the Probation Department. The State contended that appellant contacted the Probation Department on January 26, 1998, to tell them that he had been turned away again but that this was the last anyone had heard from him. A home visit was conducted by the Probation Department two (2) days later and it was discovered that appellant's residence was empty and that he had moved out. It was also revealed that, on January 26, 1998, the date "he was signed up on probation," appellant tested positive for cocaine. The State concluded that, under these circumstances, his "probation" should be revoked.
As it turned out, appellant had been evicted from his residence in Ohio and had gone to Flatwood, Kentucky. A capias was issued and he was arrested by officers of the Ashland, Kentucky, Police Department in July of 1998. Appellant was returned to Lawrence County, Ohio, where a "probation violation" hearing was held on July 13, 1998. At that time, he admitted to failing the drug test on January 26, 1998, failing to make any further appearances at the county jail to serve his sentence after January 28, 1998, and failing to report his change of address to the Probation Department.
Judgment was entered by the trial court on July 14, 1998, "revoking" the community control sanctions that had previously been imposed and sentencing appellant to eighteen (18) months imprisonment on the first drug charge to be served concurrently with twelve (12) months imprisonment on the second drug charge and eighteen months (18) months imprisonment for assault. No prison sentence was given with respect to the conviction for resisting arrest.[4] In reaching its conclusion that these sentences were appropriate, the trial court opined that appellant had already violated community control sanctions and thus he was no longer amenable to imposition of such controls. The court further found "that prison [wa]s consistent with the purposes and principles of the sentencing statutes. . ." Finally, in weighing the factors set forth in R.C. 2929.12, the court concluded that the victim "suffered physical, psychological and/or economic harm" and that recidivism was "more likely since [appellant] has shown no genuine remorse." This appeal followed.
We begin our analysis of this matter by acknowledging the responsibilities imposed upon us by the United States Supreme Court in Anders, supra. This Court is required to undertake a full examination of the proceedings below to determine whether the instant appeal is wholly frivolous. 386 U.S. at 744. If we find only frivolous issues on appeal, then we may proceed to address the case on its merits without the assistance of counsel. State v. Kent (Mar. 4, 1998), Jackson App. No. 96CA794, unreported; State v. Hart (Dec. 23, 1997), Athens App. No. 97CA18, unreported. However, if we find that there are meritorious issues for appeal, we must afford appellant the assistance of counsel in order to address them. Anders, supra
at 744; also see Penson v. Ohio (1988), 488 U.S. 75. With these principles in mind, we turn our attention to the record before us as well as the possible assignment of error posited by counsel in the appellate brief.
The gist of the possible error assigned for our review is that the lower court "inappropriately" weighed pertinent factors before sentencing appellant to three (3) concurrent terms of imprisonment. Specifically, it is argued that the trial court failed to consider his "lack of a prior record" as well as the negative result of a drug test performed on the day he was arrested in Kentucky. The State responds by emphasizing that there were numerous factors supporting the court's decision including, among others, the "physical or psychological harm" suffered by the victim, that there was "a drug pattern related to the offense" and that "the probation violations occurred while the offender was under community control." After a thorough review of the record, as well as the applicable sentencing statutes, we conclude that there are potentially meritorious errors that occurred below. We reach that conclusion, however, for somewhat different reasons than those set forth in the appellate briefs. Our reasoning is as follows.
Appellant's 1998 convictions were for fourth and fifth degree felony drug possessions, see R.C. 2929.11(C)(4)(a)(b), as well as assault on a peace officer which is also a felony of the fourth degree. See R.C. 2903.13(C)(3).[5] Rather than sentencing appellant to prison for these offenses, the trial court imposed community control sanctions pursuant to R.C. 2929.13(B)(2)(b).[6]
Community control sanctions essentially replace the concept of "probation" in Ohio's criminal justice system. See generally
Griffin Katz, Ohio Felony Sentencing Law (1998 Ed.) 394-396, §§ T5.2 — T5.4. Although similar in their operational effect, community control sanctions differ a great deal from probation in many ways including the manner by which violations of those controls are handled. Judge Griffin and Professor Katz explain this difference in their treatise as follows:
 "Prior to 1995 Senate Bill 2, it was quite appropriate for a judge to treat probation as a contract for leniency. The judge imposed but suspended a prison sentence — the presumed proper punishment for the crime of conviction. Probation was conditioned on good behavior. Violation of that probation was a breach of contract with the sentencing judge. For the breach, the judge could properly impose the suspended prison sentence — even for the most trivial violation of probation.
 Under Senate Bill 2, a sentence to a community control sanction is not a contract for good behavior that automatically is punishable by prison if it is violated. The community control sanction that is imposed is the appropriate sentence for the crime of conviction. That sanction was the one that should have adequately punished the offender for his misconduct and should have adequately protected the public from future crime by the offender. The sentence should have been reasonably calculated to achieve those overriding purposes. Just as the Parole Board can no longer extend a sentence as a revised punishment for the felony which sent the offender to the penitentiary, so the court which imposes punishment for a violation of a community control sanction cannot punish the offender again for the crime that gave rise to the community control sanction. The sanction for the violation of the community control sanction should be the sanction that is commensurate with the seriousness of the violation and adequately protects 'the public from future crime by the offender and others.' " Id. at 426-427, § T5.36 (Emphasis added.) (Footnotes deleted.)
It appears from this explanation that the offense for which appellant should have been sentenced in the lower court's July 14, 1998 entry was his violation of community control sanctions. He should not have been sentenced, or otherwise treated as violating probation for, his original convictions from the beginning of that year. The record is replete, though, with indications that this was precisely what happened. First, the proceedings below were characterized both in the State's motion and at the July 13, 1998 hearing as being to "revoke" probation. Suffice it to say that, as mentioned above, community control sanctions cannot be revoked as was probation. The transcript also reveals that the lower court based its decision, in part, upon a consideration of "the pre-sentence investigation report previously submitted" when appellant was sentenced on the original convictions.[7] The July 14, 1998 sentencing entry also sets forth the court's opinion that prison sentences were warranted in this case due to the "physical, psychological and/or economic harm" which the "victim suffered." There was no in appellant's violation of community control sanctions and, thus, we presume that the court was referring to the original convictions.
The pertinent statutes appear to direct the focus of a court's inquiry on violation of a community control sanction to the violation of the sanction itself, and not the original offense(s) which led to its imposition. It logically follows then that the court must focus on determining a punishment that is commensurate with the seriousness of the sanction violation and which adequately protects the public from any future crime by the offender. See R.C. 2929.11(A). Because, the community control sanction chosen constitutes adequate punishment, the primary issues posed by a violation of that sanction would be whether the violation evidences a need for stronger protection of the public and how much punishment is deserved for failing to respect the court's authority or breaching the court's trust. Griffin Katz, supra at 295, § T1.15. Moreover, as Judge Griffin and Professor Katz explain in the following excerpt from their treatise, imprisonment is not always warranted for violations of community control sanctions:
 "Many violations of community control sanctions will not indicate that the offender poses a likelihood of committing future crime so much as that the offender is resistant to control. Failures to report to the supervising officer, failures to participate faithfully in an educational or treatment program, failures to seek or hold employment, failures to perform community service, failures to make regular payments of restitution, and even failures to abide faithfully by an electronic monitoring sanction may not necessarily indicate a likelihood of criminal behavior so much as a resistance to supervision. Absent evidence that the offender is likely to be engaging in conduct harmful to the public, the purpose of any sanction for such violation is to compel compliance with the original sanction and to prevent continued disobedience of the court's order. Thus, prison would usually not be appropriate.
 Evidence may exist, however, that the offender's misconduct — albeit not criminal — shows that the offender is likely to be committing other crimes that are harmful to the public. In that event, a sanction sufficient to deter such conduct would be appropriate for a noncriminal violation of a community control sanction. That deterrent sanction might not, however, be a prison sanction. The critical question for the court would be 'what is the sanction that imposes the least burden on state or local governmental resources that is necessary to protect the public from future crime'? The answer might be prison, but it might also be electronically monitored home detention, residence in a halfway house, or a sentence to jail or to a community-based corrections facility." Id. at 427, §§ T5.36-T5.37.
We conclude, from reading the transcript of the July 13, 1998 sentencing hearing as well as reviewing the sentencing entry of July 14, 1998, that a colorable argument could be made to the effect that the trial court considered the wrong factors in sentencing appellant. It would also appear that appellate counsel as well as the State may have made the same mistake in prosecuting this appeal. Counsel contends in appellant's brief that the court below failed to give proper consideration to his lack of a prior record. The fact of the matter is, however, that appellant does have a prior record because of his convictions from January 1998. At issue below was appellant's violation of the community control sanctions which is a different matter entirely from the issue of punishment for the original drug and assault convictions. Likewise, the State argues in its brief that the "harm" suffered by the victim is a valid consideration in support of the trial court's sentence. We question this argument. There is nothing in the record to show that anyone was victimized by appellant's violation of the community control sanction. The "victim" to which the State presumably refers is the police officer assaulted by appellant during commission of the offenses for which he was previously sentenced. As mentioned above, however, this is not a proper consideration when reviewing possible sanctions for violating community controls.
There also appears to be another colorable issue for appeal arising from these proceedings. The provisions of R.C.2929.19(B)(5) allow for a criminal defendant to be sentenced to community control sanctions if the trial court believes it is appropriate and if imposition of this sanction is not prohibited by law. This statute also requires that the following notice be given:
 "The court shall notify the offender that, if the conditions of the sanction are violated . . . the court may impose a longer time under the same sanction, may impose a more restrictive sanction, or may impose a prison term on the offender and shall indicate the specific prison term that may be imposed as a sanction for the violation, as selected by the court from the range of prison terms for the offenses pursuant to section 2929.14
of the Revised Code." (Emphasis added.) Id.
If the conditions of community control sanctions are violated, the trial court is permitted to impose a prison sentence on the offender provided that the violation itself is not going to be prosecuted as an offense. R.C. 2929.15(B). However, the possible prison sentence is limited by the following caveat from that statute:
 "The prison term if, any, imposed upon a violator pursuant to this division shall be within the range of prison terms available for the offense for which the sanction that was violated was imposed and shall not exceed the prison term specified in the notice provided to the offender at the sentencing hearing pursuant to [R.C. 2929.19(B)]." Id. (Emphasis added.)
In other words, under these statutes, a violator may only be imprisoned for violating community control sanctions if (1) he was previously given notice of the specific prison term that would be imposed for such violation at the original sentencing hearing, and (2) the term of imprisonment given for violating the community control sanction does not exceed the term for which he was given notice at that prior hearing. It is unclear to us, from the record as it now exists, whether such notice was given to appellant below. The July 14, 1998 sentencing entry contains no such provision. However, it may well have been that notice of the probable prison sentence for violating the sanctions was given to appellant from the bench during the July 13, 1998 sentencing hearing. A transcript of those proceedings was not included in the record and, thus, will have to be obtained in order to determine if there was requisite compliance with R.C. 2929.19(B)(5) R.C. 2929.15(B).
To summarize, we find several nonfrivolous issues to be argued on appeal of this case. There is arguable merit to the position that the trial court considered the wrong factors when deciding whether to impose a prison sentence for violation of the community control sanctions. Further, there may also be arguable merit to the contention that such prison sentence could not be imposed because notice was not given during the original sentencing hearing. This is a matter which will have to be further investigated by counsel. In any event, pursuant to Anders, supra, this Court finds that there are meritorious issues to be appealed in this case. Appellant is entitled to legal counsel to assist him in the presentation and argument of those issues. Therefore, this Court will issue an order appointing counsel to explore the issues herein set forth.
Finally, in conclusion, we would emphasize thatnothing in this opinion should be construed as criticism for the manner by which this case was handled below or on appeal. The problem here lies not with the attorneys or the trial court, all of which clearly attempted to resolve this matter in an able and judicious fashion, but with the seemingly endless complexity and constant amendments to the new felony sentencing laws. On virtually every occasion in which one has reason to examine or review those statutes, one finds a new and unconventional procedure for handling a problem which was once relatively simple under our previous system of criminal jurisprudence. This Court, as undoubtedly do other members of the bench and bar, frequently experiences difficulty in construing these often convoluted and sometimes contradictory statutes. If it were not for the work of Judge Griffin and Professor Katz, these provisions would be almost indecipherable. Nevertheless, this Court is charged with the responsibility of applying those laws and, from our review of the record in the cause sub judice, there would appear to be several meritorious arguments that they were applied incorrectly below.
For these reasons, we decline to address the merits of this appeal at the present time. An order will be forthcoming as to the issue of appointed counsel to brief and argue the points raised herein.
Harsha, J. Kline, P.J.: Concur in Opinion
IT IS SO ORDERED
 _______________________________ Peter B. Abele Judge
[1] This Court filed an entry on October 23, 1998, directing the Lawrence County Clerk of Courts to serve a copy of counsel's "Anders brief" upon appellant. We also granted him twenty (20) days in which to file his own supplemental pro se brief. Although service was successful, appellant filed no brief of his own.
[2] The indictment actually sets forth the drug offenses as violations of subsections (A)(4)(a)(b) of R.C. 2925.11. However, a review of that statute reveals that such subsections simply do not exist. We therefore presume that this was a typographical error and that appellant was meant to be charged under subsections (C)(4)(a) (b).
[3] The term "probation" is no longer used in felony sentencing since the 1995 passage of Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136, which overhauled Ohio's felony sentencing laws.See Griffin Katz, Ohio Felony Sentencing Law (1998 Ed.)394 
428, §§ T5.2 T5.39. We will nevertheless use it here in order to remain consistent with the terminology below.
[4] The court stated, at the sentencing hearing, that the misdemeanor conviction for this offense would be merged into "the three felonies."
[5] For purposes of our analysis, we will disregard appellant's misdemeanor conviction for resisting arrest in violation of R.C. 2921.33.
[6] A "community control sanction" is defined as a sanction that is not a prison term and that is described in Sections 2929.16,2929.17 or 2929.18 of the Ohio Revised Code. R.C. 2929.01. The sanctions imposed in the cause sub judice included six (6) months in the county jail, under R.C. 2929.16(A)(1), and "intensive supervision" pursuant to R.C. 2929.17(E).
[7] Oddly enough, however, there is no presentence investigation report contained in the record. We note that community control sanctions could not have originally been imposed upon appellant without consideration of such a report. See R.C. 2951.03(A)(1).