

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-15-00059-CV

IN THE INTEREST OF V.E.C., II, A CHILD

On Appeal from the 140th District Court
Lubbock County, Texas
Trial Court No. 2013-506,031, Honorable Jim Bob Darnell, Presiding

June 2, 2015

MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Following a trial *de novo* of the associate judge's recommendation, the mother[1] appeals the February 2, 2015 order of the district court terminating her parent-child relationship with V.E.C.[2] Her court-appointed appellate counsel has filed a motion to

---

[1] To protect the child's privacy, we will refer to appellant as "the mother" and the child by his initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2011); TEX. R. APP. P. 9.8 (a),(b).

V.E.C.'s biological father executed an affidavit of relinquishment of parental rights and did not appeal. TEX. FAM. CODE ANN. § 161.001(1)(K), (2) (West 2011).

[2] The district court found by clear and convincing evidence the mother engaged in conduct constituting the predicate termination grounds stated in Family Code sections 161.001(E),(N), and (O) and that termination of the parent-child relationship was in the

withdraw from representation supported by an *Anders*[3] brief. We will grant counsel's motion to withdraw and affirm the order of the district court.

Background

V.E.C. was born on February 6, 2013. Acting on a report of neglectful supervision, appellee Texas Department of Family and Protective Services initiated proceedings for protection, conservatorship, and termination. V.E.C. was placed in foster care on March 9, 2013, and there remained at the time of hearing. The Department was appointed temporary managing conservator on March 8, 2013, and the associate judge specified in a March 20, 2013 written order the actions required of the mother for V.E.C.'s return.

Testimony shows V.E.C. suffers from hydrocephalus. According to his foster mother, who was a pediatric nurse for twenty years with experience in a neonatal intensive care unit, V.E.C.'s brain did not separate into the right and left hemispheres but was just "one big glob" in the center of the cranial cavity. Because the void in V.E.C.'s skull fills with fluid, a shunt was installed to drain the liquid into the peritoneal cavity of the abdomen. There it is absorbed. V.E.C. is developmentally delayed, requires significant specialized care, and has a life expectancy, according to his foster

---

best interest of V.E.C. TEX. FAM. CODE ANN. § 161.001(1)(E),(N), & (O) and (2). The court also ordered termination under Family Code section 161.003 finding the requirements of that section met. The district court stated the mother "has a mental or emotional illness or a mental deficiency that renders the mother unable to provide for the physical, emotional and mental needs of [V.E.C.] pursuant to § 161.003, Texas Family Code."

[3] *Anders v. California,* 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

mother, of about twenty years.  V.E.C.'s foster mother and her husband plan to adopt V.E.C.

Concerning the mother, evidence showed a history of involvement with mental health professionals over the preceding decade, including hospitalization.  The mother testified she has a diagnosis of "bipolar by proxy."  In the opinion of a psychologist who conducted a court-ordered evaluation, the mother suffers "severe mental health problems that need[] intensive intervention."  She recommended individual therapy and immediate psychiatric treatment for the mother.  The mother participated in four individual sessions with the psychologist but stopped attending for no specified reason and did not pursue psychiatric treatment.

The mother was ordered to obtain mental health services through MHMR, including counseling and prescribed medication.  Nevertheless, she did not seek psychiatric treatment and medication therapy.

By order, the mother was also required to maintain "appropriate stable housing free of any potential safety, sanitary or health hazards for a continuous period" of at least six months.  At the time of the hearing, the mother's apartment lacked any furniture except for a crib for V.E.C.  The apartment had no stove or refrigeration and the mother kept food in an ice chest.  The evidence showed she did not have functioning air conditioning and her source of heat was either a wall furnace or space heater.  The mother was unemployed but received disability income and food stamps.

Additionally, the court ordered the mother attend and participate in all supervised visitation with V.E.C. This ended in April 2014 when the mother called the police and refused to give V.E.C. back to the caseworker.

The mother was also ordered to attend and participate in V.E.C.'s medical appointments. She ceased participation after April 2014. She testified she did so because she was upset by the manner in which other people at the doctor's office acted toward her and V.E.C.

There was evidence the mother has sustained physical abuse by three men including the father of V.E.C. At the time of the final hearing, she was under an order of three years' deferred adjudication community supervision for assaulting a public servant. According to the mother's testimony, during the summer of 2014 she was arrested and jailed for about a month for the offense of "silent abuse of 9-1-1." She did not report this arrest to the Department despite an order to do so.

## Analysis

The *Anders* procedures are applied in appeals of orders terminating parental rights. *See In re A.W.T.,* 61 S.W.3d 87, 88 (Tex. App.—Amarillo 2001, no pet). In support of her motion to withdraw, counsel certifies she conducted a diligent examination of the record and, in her opinion, the record reflects no arguable basis to support an appeal. She further certifies having diligently researched the law applicable to the facts and issues and discusses why, in her professional opinion, the appeal is frivolous. *In re D.A.S.,* 973 S.W.2d 296, 297 (Tex. 1998). Counsel also provided the mother with a copy of the brief and notified her of the right to file a *pro se* response. *Id.*

By letter, we also notified the mother of the opportunity to file a response to her counsel's brief. Nevertheless, the mother did not file a response.

As the reviewing court we conduct an independent evaluation of the record to determine whether counsel correctly determined the appeal is frivolous. *See Stafford v. State,* 813 S.W.2d 503, 511 (Tex. Crim. App. 1991). Only then may we grant counsel's motion to withdraw. *See Penson v. Ohio,* 488 U.S. 75, 82-83, 109 S. Ct. 346, 102 L. Ed. 2d 300 (1988).

## Conclusion

After carefully reviewing the appellate record and counsel's brief, we conclude that the record does not demonstrate an arguable ground for appellate review. We therefore grant appellate counsel's motion to withdraw and affirm the district court's order of termination.[4] TEX. R. APP. P. 43.2(a).

James T. Campbell
Justice

---

[4] Counsel shall, within five days after this opinion is handed down, mail the mother a copy of the opinion and judgment along with notification of the right to file a *pro se* petition for discretionary review under appellate rule 53. The documents and notification shall be sent to the mother at her last known address via certified mail, return receipt requested. Counsel shall also send this court a letter certifying compliance and attaching a copy of the return receipt within the time for filing a motion for rehearing. TEX. R. APP. P. 2; *cf.* TEX. R. APP. P. 48.4.