# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00306-CV

---

**C. L. J., Appellant**

v.

**Texas Department of Family and Protective Services, Appellee**

---

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-19-008449, THE HONORABLE CATHERINE MAUZY, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant C.L.J. (Father) appeals from the district court's order, following a bench trial, terminating his parental rights to his son C.J., born March 10, 2014 (Son). Counsel for Father has filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 744 (1967). We will affirm the district court's termination decree.

At trial, the district court heard evidence that Father was facing criminal charges for sex trafficking. Bridget Cummiskey, a detective in the human trafficking unit of the Austin Police Department, testified that on December 18th, 2019, she responded to a call of an in-progress report of human trafficking at a hotel in Austin. When Detective Cummiskey arrived at the hotel and spoke to a clerk, she learned that a woman "had been assaulted by someone in her hotel room, and she ran out half-dressed and ran down to the office and hid behind the clerk's desk and told her to call 911." The woman, who had visible injuries including "swelling to her

eye area, as if she had been punched, and scratches on her face and neck," was transported to the police department, where she was interviewed by another detective, while Cummiskey remained at the hotel to assist in apprehending Father. Cummiskey explained that her unit "ended up having to call the SWAT team to come because [Father] wouldn't come out of the hotel room" and was in possession of a firearm. At some point during the standoff, another woman and Son exited the hotel room, while Father remained inside. Son was taken into CPS custody, and Father eventually came out of the room and was arrested and charged with the offense of continuous sex trafficking. Cummiskey further testified that following Father's arrest, other women came forward to accuse Father of trafficking them, that Father was facing similar trafficking charges in Harris County and Kenner, Louisiana, and that federal authorities were "looking at charging him federally for this whole multi-state scheme, and possibly in California."

Department investigator Erin Mark testified that she had been assigned to the case in January 2020. Mark testified that Son had been placed in a foster home at the beginning of the case and that he had remained in that same foster home throughout the case. Mark also testified that Son "talk[ed] a lot about missing his dad, but he also talked a lot about wanting to be a part of his foster family, being a part of the family and liking the brothers and sisters and the mom and dad." Mark testified that Son had positive interactions with the foster family.

Mark described the services that Father was ordered to complete, her efforts in helping Father complete those services, and the difficulty that Father experienced in completing his services because of his incarceration. Mark further discussed the home studies that the Department had performed on various relatives of Father and explained that the placements were not approved either because the relatives did not want to care for Son, were uncooperative with the Department, or were believed to be involved in criminal activities.

Department caseworker Kayla Rascon, who took over the case from Mark in October 2020, provided similar testimony regarding the Department's unsuccessful efforts to find a relative placement for Son, Father's failure to complete his court-ordered services, and Son's positive relationship with his foster family. Rascon also testified that she had no concerns regarding the foster placement but was "very concerned about the pending criminal charges" against Father. Rascon also expressed concern that Son had been found at the hotel where Father was arrested. She explained,

> Well, just with the allegations of the human sex trafficking, I mean, with the child being there at the hotel is a huge concern for the potential things that he could have witnessed, and the potential, you know, other people that were around, whether it be prostitutes or people looking for those kinds of services, but the child is there.

Licensed Professional Counselor Cristi Copeland, who provided therapy for Son, testified that Son "did not report any sexual trauma, no molestation, no observing of anything." However, Copeland added that because Son had been placed in an environment where alleged sex trafficking had occurred, she had "definite concerns" about Son's possible "exposure to inappropriate behaviors to sexual acts or sexual images" that he might not have reported to her. Copeland also testified that Son was doing well in his foster placement, that he was bonded with his foster parents, and that she had no concerns for Son's safety in his foster home.

Trista Allen, the CASA volunteer assigned to the case, testified that Son was doing well in his foster placement and that she did not have "any serious concerns in regard to his foster care placement." Allen explained that she had visited with Son at his foster home on multiple occasions, that it was a stable home where Son's emotional and physical needs were being met, and that Son told her that he enjoyed spending time with his foster family. Allen

testified that CASA did not have any concerns regarding the foster parents' parenting abilities, that the foster parents were willing to adopt the child, and that CASA believed it was in Son's best interest for Father's parental rights to be terminated so that the adoption could proceed.

Father testified and repeatedly invoked his Fifth Amendment privilege against self-incrimination in response to questions by the Department concerning the criminal charges pending against him and the events at the hotel on the night that he was arrested. Father, who was in jail in Louisiana on May 25, 2021, the date of his trial, claimed that he would be released from jail on July 27. Father testified that upon his release, he planned on living with his grandmother in Tennessee. Father also testified that he loved Son, blamed the COVID-19 pandemic for his failure to complete his court-ordered services, and claimed that moving forward, he would comply with all court-ordered requirements in order to have Son returned to him.

At the conclusion of trial, the district court found that termination of Father's parental rights was in the best interest of the child and that Father had: (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the physical or emotional well-being of the child; (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well being of the child; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary to obtain the return of the child who had been in the conservatorship of the Department for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (O). This appeal followed.

4

Court-appointed counsel has filed an *Anders* brief concluding that the appeal is frivolous and without merit. *See* 386 U.S. at 744; *In re P.M.*, 520 S.W.3d 24, 27 & n.10 (Tex. 2016) (per curiam) (approving use of *Anders* procedure in appeals from termination of parental rights because it "strikes an important balance between the defendant's constitutional right to counsel on appeal and counsel's obligation not to prosecute frivolous appeals" (citations omitted)). The brief meets the requirements of *Anders* by presenting a professional evaluation of the record and demonstrating why there are no arguable grounds to be advanced on appeal. *See* 386 U.S. at 744; *Taylor v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 646-47 (Tex. App.—Austin 2005, pet. denied). Counsel has certified to this Court that he has provided his client with a copy of the *Anders* brief and informed him of his right to examine the appellate record and to file a pro se brief. No pro se brief has been filed.

Upon receiving an *Anders* brief, we must conduct a full examination of the record to determine whether the appeal is wholly frivolous. *See Penson v. Ohio*, 488 U.S. 75, 80 (1988); *Taylor*, 160 S.W.3d at 647. After reviewing the entire record and the *Anders* brief submitted on Father's behalf, we have found nothing in the record that might arguably support an appeal. Our review included the district court's endangerment findings, *see* Tex. Fam. Code § 161.001(b)(1)(D), (E), and we have found no issues that could be raised on appeal with respect to those findings, *see In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019). We agree with counsel that the appeal is frivolous. Accordingly, we affirm the district court's termination decree.

_____

Gisela D. Triana, Justice

Before Justices Triana, Kelly, and Smith

Affirmed

Filed:   October 21, 2021