# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00306-CV

---

**S. D., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

### FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-20-005676, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant S.D. (Father) appeals from the district court's order, following a bench trial, terminating his parental rights to his children K.W.D., born December 4, 2017 (Son), K.R.D., born July 31, 2019 (Daughter 1), and B.L.D., born October 12, 2020 (Daughter 2).[1] Father's court-appointed counsel has filed a motion to withdraw and an *Anders* brief concluding that the appeal is frivolous and without merit. *See Anders v. California*, 386 U.S. 738, 744 (1967); *In re P.M.*, 520 S.W.3d 24, 27 & n.10 (Tex. 2016) (per curiam) (approving use of *Anders* procedure in appeals from termination of parental rights because it "strikes an important balance between the defendant's constitutional right to counsel on appeal and counsel's obligation not to

---

[1] The district court also terminated the parental rights of the children's mother, L.A.D. (Mother), based on findings that termination was in the best interest of the children and that Mother had endangered the children and failed to comply with the provisions of a court order that specifically established the actions necessary to obtain the return of children. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (O), (2). Mother has not appealed the district court's order.

prosecute frivolous appeals" (citations omitted)). The brief meets the requirements of *Anders* by presenting a professional evaluation of the record and demonstrating why there are no arguable grounds to be advanced on appeal. *See* 386 U.S. at 744; *Taylor v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 646-47 (Tex. App.—Austin 2005, pet. denied). Counsel has certified to this Court that she has provided her client with a copy of the *Anders* brief and informed him of his right to examine the appellate record and to file a pro se brief. No pro se brief has been filed. We will affirm the district court's decree of termination.

Upon receiving an *Anders* brief, we must conduct a full examination of the record to determine whether the appeal is wholly frivolous. *See Penson v. Ohio*, 488 U.S. 75, 80 (1988); *Taylor*, 160 S.W.3d at 647. The record reflects that this case began in August 2020, when Father called law enforcement to report that L.A.D., the mother of the children (Mother) was experiencing hallucinations involving violent acts committed against the children. Law enforcement investigated the report and came to believe that Mother was a threat to the children's safety, and a referral was made to the Texas Department of Family and Protective Services (the Department) alleging neglectful supervision. Mother was hospitalized, diagnosed with schizophrenia, and tested positive at the hospital for benzodiazepines, methamphetamine, and amphetamines. She was pregnant at the time with Daughter 2.

When the case began, Father was contacted by CPS investigator Jaclyn Alcoser, who averred in the removal affidavit that Father "stated he doesn't trust CPS and doesn't want to be involved with CPS. He stated he's not the problem and he doesn't know why CPS is involved when he did what he was supposed to do and [got] [Mother] out of the home." However, Father had a history of substance abuse that concerned the Department. In a 2018 CPS investigation, Father admitted to using methamphetamine "a few times to stay up at work due to lack of sleep,"

2

and he tested positive at that time for methamphetamine, amphetamines, and cocaine. During that previous investigation, Mother had also tested positive for methamphetamine and again was hospitalized with psychiatric issues.

At the beginning of this case, Father obtained an emergency protective order against Mother and maintained custody of the children. However, as the investigation continued, Father became "more resistant to cooperating" with the Department. Alcoser, in her testimony at trial, explained, "He was beginning to not answer the door. . . . There were times that he would shout through the door that he didn't want the Department to be there. He was becoming more aggressive with his behaviors and overall interaction with the Department." Additionally, the results of a drug test that Father took in November 2020 were "concerning" to the Department.[2] Alcoser elaborated, "I was concerned for the children because [Father] was their sole caregiver at that time, and the drug test results indicated to me that he was not capable of providing appropriate care for them." After receiving the test results, the Department sought and obtained emergency removal of the children from Father's care. The Department picked up the two older children from daycare, and when Alcoser arrived at Father's apartment to pick up Daughter 2, she discovered that Mother was there and that Father was allowing her to care for the newborn, despite the protective order in place that prohibited her from being inside Father's apartment. Alcoser testified that Father acted in an "aggressive manner" toward both her and law enforcement as they removed Daughter 2 from the apartment.

---

[2] Before Alcosar could testify to the test results, Father objected to their admissibility on hearsay grounds, and the district court sustained the objection. However, in the removal affidavit, a copy of which is contained in the clerk's record, Alcoser averred that Father tested positive for methamphetamine and amphetamines. Additionally, Alcoser later testified without objection that one of her concerns prior to removal was that Father had tested positive for methamphetamine.

Father's court-ordered service plan to obtain the return of the children included participating in and completing a psychological evaluation and following all recommendations, submitting to random drug and/or alcohol testing, participating in nurturing parenting classes, and attending and participating in individual counseling. Father was also allowed to have supervised visits with the children. Department caseworker Carole Wall, who observed some of the visits, testified that during one visit, Father acted "very hostile towards the staff," refusing to wear a mask after he had been asked to do so and becoming "very abusive in his language to where the person who was supervising [the visit] felt scared." On various occasions, Father would also "yell" and "scream" at Wall, Department caseworker Phoebe Sosa, who took over the case from Wall beginning in November 2021, and Father's therapist, Melissa Baker.

At the time of trial in May 2022, Father had completed his drug-and-alcohol assessment but had not completed his psychological evaluation, substance abuse treatment, drug testing, or parenting classes. Wall testified that Father was unsuccessfully discharged from his parenting classes for "miss[ing] too many sessions" and that he had tested positive for "illegal substances" in January and March 2021. Father refused to take any requested drug tests after March 2021, and he admitted to his therapist that he was using methamphetamine.

In April 2021, during a phone call with the Department, Father and Mother could be heard arguing over the phone, with Mother stating that Father had thrown a wrench at her, and Wall called 911 to report what she believed to be possible domestic violence. Police responded to the call and, after observing an injury to Mother, arrested Father for assault-family violence. One of the police officers who had responded on "multiple occasions" to other 911 calls involving Mother and Father testified that "there had been lots of allegations of violence made by [Mother] against [Father]," that Father "often seem[ed] to be in emotional upheaval as far as

4

when [officers] interacted with him," that "[h]e was often not calm or clear emotionally," and that there was "one instance . . . where he struggled with commands given by officers and they had to utilize a taser on him."

The children had been placed with foster parents. The foster mother, T.G. (Foster Mother) testified to her relationship with the children and their development while in her care. Foster Mother testified that she and her husband intended to adopt the children and maintain contact with the children's biological aunt and uncle, who had expressed support for the adoption. Caseworker Wall testified that the children's needs were being met in the foster placement, and caseworker Sosa testified that the children were doing "very well" and "thriving" in the placement and were "very bonded with their foster parents," referring to them as "mom and dad." The guardian ad litem for the children testified similarly.

Father did not testify or personally appear at trial, although he was represented by counsel.

At the conclusion of trial, the district court found that termination of Father's parental rights was in the best interest of the children and that Father had: (1) knowingly placed and knowingly allowed the children to remain in conditions and surroundings which endangers the physical and emotional well-being of the children; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary to obtain the return of children. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (O), (2). This appeal followed.

After reviewing the entire record and the *Anders* brief submitted on Father's behalf, we have found nothing in the record that might arguably support an appeal. Our review

included the district court's endangerment findings, *see* Tex. Fam. Code § 161.001(b)(1)(D), (E), and we have found no issues that could be raised on appeal with respect to those findings, *see In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019). We agree with counsel that the appeal is frivolous.

## CONCLUSION

We affirm the district court's decree of termination.[3]

_____
Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Smith

Affirmed

Filed: August 30, 2022

_____

[3] We deny counsel's motion to withdraw. The Texas Supreme Court has held that the right to counsel in suits seeking termination of parental rights extends to "all proceedings [in the Texas Supreme Court], including the filing of a petition for review." *In re P.M.*, 520 S.W.3d 24, 27-28 (Tex. 2016) (per curiam). Accordingly, if after consulting with counsel Father desires to file a petition for review, counsel should timely file with the Texas Supreme Court "a petition for review that satisfies the standards for an *Anders* brief." *See id*.