**Affirm and Opinion Filed December 15, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00341-CV**

**IN THE INTEREST OF A.C., A CHILD**

**On Appeal from the County Court At Law No. 1**
**Kaufman County, Texas**
**Trial Court Cause No. 107543-CC**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Nowell
Opinion by Justice Nowell

The trial court terminated Father's parental rights to his child, A.C., following a one-day bench trial. Father's court-appointed attorney filed a brief concluding the appeal is frivolous and without merit. *See Anders v. California*, 386 U.S. 738, 744 (1967); *In re D.D.*, 279 S.W.3d 849, 849–50 (Tex. App.—Dallas 2009, pet. denied) (applying *Anders* procedure in appeal from termination of parental rights). Because we find no meritorious issues in our review of the record, we affirm the trial court's order.

FACTUAL BACKGROUND

On February 11, 2021, an officer stopped Father's vehicle in which Mother[1] was a passenger. Mother was arrested for possession of a controlled substance, and five-year-old A.C. was released to Father. Father was not a licensed driver.

After the traffic stop, police contacted the Department of Family and Protective Services. A safety plan for A.C. was put into place on February 23. The plan called for a neighbor to regularly check on A.C. Subsequently, the neighbor contacted the Department to report that Father attempted to purchase urine from the neighbor for a drug test. A.C. was removed from Father's care, placed with family members, and then moved to foster care. When the Department was named as A.C.'s temporary managing conservator, Ashley Gaskey was assigned as his case worker and Doug Pritchard was the appointed CASA and guardian ad litem.

Gaskey met with Father to discuss his social history and create a service plan, which the trial court took judicial notice of during trial. Father acknowledged he understood what was being asked of him. Father began using methamphetamines at or near the time of A.C.'s birth. His services included attending a drug-treatment program. Throughout the pendency of this case, including after being ordered to participate in substance abuse treatment, Father failed to appear for drug tests. When a person fails to appear for drug testing, the Department considers the test a

---

[1] Mother's parental rights also were terminated in the same proceeding. We addressed the issues Mother raised on appeal in a separate opinion. *See In re A.C.*, No. 05-22-00341-CV, 2022 WL 4923519, at *1 (Tex. App.—Dallas Oct. 4, 2022, no pet. h.) (mem. op.).

presumed positive. Gaskey had no reason to believe that Father had addressed his methamphetamine addiction. Gaskey testified that drug use was the biggest impediment to Father having a stable home, a stable job, and A.C. returned. When asked whether the parents understood that their use of methamphetamines negatively affected their ability to parent, Gaskey testified: "No. They thought if [A.C.] was in a different room when they were smoking, it wasn't impacting him. Even though they were under the influence, they were still able to parent [A.C.] effectively."

Father was required to obtain stable housing, but he did not do so. Gaskey testified that before A.C. was removed, Mother and Father lived in a house where the roof "was falling in," "there were no steps to the house," and the house smelled like methamphetamines. Mother confirmed they had smoked methamphetamines in the house. After A.C. was removed, Father and Mother lost this housing when Father lost his job, and they then lived in their car, a motel, and with Father's family.

Father was required to provide proof of income, but did not do so. Father had four jobs during the pendency of the case. Initially, Father worked as a ranch hand and a handyman. He lost his job as a ranch hand when he stopped going to work because he and Mother were fighting. Father also worked at a job in Shreveport for approximately two months; Father did not see A.C. during this time and did not tell Gaskey that he was living and working in Shreveport. Between December 2021 and the trial date, March 17, 2022, Father worked for a company that provided car washing services at a car dealership; Gaskey visited Father at the car dealership and

confirmed Father was employed, but she was unable to determine how many hours per week he worked. Father's last visit with A.C. was on December 27, 2021; Father said he stopped visiting because he did not want to take time off from work.

Father reported Mother physically abused him. Gaskey testified: "[Father] told me that him [sic] and [Mother] would fight all the time. She would throw things at him. He's missing part of his ear, and he told me that was from a situation he was having with [Mother] and he lost part of his ear." He explained that Mother "threw something at him and it tore off part of his ear." Gaskey saw fresh wounds on Father and confirmed part of Father's ear was missing. When Father reported the abuse to Gaskey, he and Mother had separated, but they reunited the following week.

A.C. initially was placed with a foster family for approximately three months and then with an uncle and aunt; he continued living with the uncle and aunt through the time of trial. Gaskey testified the uncle "reported that he knows [A.C.] was left alone on multiple occasions when [Mother and Father] had him."

The foster family where A.C. was initially placed was interested in adopting A.C. Gaskey testified the family wanted "him to come back in the home and make sure that everything is still good with him and the other children in the home. They are open to adopting if things go well." The Department considered this placement suitable for A.C., and, if the Department remained the conservator after trial, Gaskey expected A.C. would be moved the following week. She believed this placement would be in his best interest. Pritchard testified A.C. received "[o]utstanding care"

in the foster home, and Pritchard opposed A.C. leaving that home. He "[a]bsolutely" believed the foster home was equipped to meet all of A.C.'s needs, and it is in his best interest to return there.

Gaskey did not believe it was in A.C.'s best interest to be returned to a parent who is actively using methamphetamines or lacked stable housing or jobs. When asked whether he thought termination was in A.C.'s best interest, Pritchard replied "[a]bsolutely." He also believed it was in A.C.'s best interest to obtain permanency through adoption.

The trial court terminated Father's parental rights pursuant to subsections 161.001(b)(1)(D), (E), (O), (P) of the family code and found termination was in A.C.'s best interest pursuant to subsection 161.001(b)(2).

DISCUSSION

Father's court-appointed counsel filed an *Anders* brief. The Court provided a copy of the brief to Father and advised him of his right to review the record and file a pro se response. Father did not file a response.

Upon receiving an *Anders* brief, we conduct a full examination of the proceedings to determine whether the appeal is wholly frivolous. *Penson v. Ohio*, 488 U.S. 75, 80 (1988). The brief filed by Father's counsel meets the requirements of *Anders* by presenting a professional evaluation of the record demonstrating why there are no arguable grounds to be advanced on appeal. *See Anders*, 386 U.S. at 744; *In re D.D.*, 279 S.W.3d at 849–50. We independently reviewed the entire record

and counsel's *Anders* brief, and we agree that the appeal is frivolous and without merit.

Counsel's brief states he is filing a motion to withdraw and requests we grant leave for him to withdraw as appellate counsel; no separate motion was filed with the Court. A court-appointed attorney's duties to a client in a parental rights termination case continue through the filing of a petition for review, and a motion to withdraw may be premature unless good cause is shown. *In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016) (per curiam). Counsel has not shown good cause for withdrawing from his representation of Father, and, as a result, his obligations have not been discharged. *See id*.

CONCLUSION

We affirm the trial court's final order terminating Father's parental rights to A.C.

/Erin A. Nowell//

220341f.p05
ERIN A. NOWELL
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF A.C., A CHILD, Appellant

No. 05-22-00341-CV

On Appeal from the County Court At Law No. 1, Kaufman County, Texas Trial Court Cause No. 107543-CC. Opinion delivered by Justice Nowell. Justices Partida-Kipness and Pedersen, III participating.

In accordance with this Court's opinion of this date, the order of termination of the trial court is **AFFIRMED**.

Judgment entered this 15th day of December 2022.