# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00804-CV

---

### A. G., Appellant

### v.

### Texas Department of Family and Protective Services, Appellee

---

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-20-006304, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Following a jury trial, the district court terminated the parental rights of A.G. (Mother) to her child, K.E.G. (Son 2), who was approximately two years old at the time of trial.[1] Mother's court-appointed counsel has filed an *Anders* brief concluding that the appeal is frivolous and without merit. *See Anders v. California*, 386 U.S. 738, 744 (1967); *In re P.M.*, 520 S.W.3d 24, 27 & n.10 (Tex. 2016) (per curiam) (approving use of *Anders* procedure in appeals from termination of parental rights because it "strikes an important balance between the defendant's constitutional right to counsel on appeal and counsel's obligation not to prosecute frivolous appeals" (citations omitted)); *Taylor v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 646-47 (Tex. App.—Austin 2005, pet. denied).

---

[1] For the child's privacy, we refer to him, his mother, and others by their initials and by their relationships to each other. *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8. As we discuss below, Mother had her parental rights to Son 2's older brother (Son 1) terminated shortly after this case began.

The brief meets the requirements of *Anders* by presenting a professional evaluation of the record and demonstrating why there are no arguable grounds to be advanced on appeal. *See* 386 U.S. at 744; *Taylor*, 160 S.W.3d at 646-47. Counsel has certified to this Court that she has provided her client with a copy of the *Anders* brief and informed her of her right to examine the appellate record and to file a pro se brief. No pro se brief has been filed. Upon receiving an *Anders* brief, we must conduct a full examination of the record to determine whether the appeal is wholly frivolous. *See Penson v. Ohio*, 488 U.S. 75, 80 (1988); *Taylor*, 160 S.W.3d at 647.

This case began in October 2020, when the Texas Department of Family and Protective Services (the Department) received a report alleging that Mother had tested positive for benzodiazepines upon giving birth to Son 2. According to the Department's removal affidavit, a copy of which was admitted into evidence during trial, the Department determined that the hospital had administered benzodiazepines to Mother during labor and that this had caused the positive test result. Nevertheless, at the time of Son 2's birth, Mother had an ongoing case with the Department involving Son 1, and the Department was concerned that during that case, Mother had failed to address issues related to her mental health, substance abuse, and "her history of engaging in unhealthy relationships that involve domestic violence." In November 2020, Mother's parental rights to Son 1 were terminated.

While this case was pending, multiple incidents of domestic violence were reported between Mother and her boyfriend N.M. (Boyfriend). Following the first incident, which occurred in April 2021 at the apartment where Mother lived with Son 2 and Boyfriend, Son 2 was removed from Mother's care. Also while the case was pending, Mother was required to complete various court-ordered services, which included submitting to drug tests when

2

requested by the Department, participating in a psychiatric evaluation and a psychological evaluation, attending and completing parenting classes, engaging in individual therapy, and participating in domestic violence classes.

The case proceeded to a four-day jury trial at which numerous witnesses testified. These witnesses included the Department investigator; two Department caseworkers, including the caseworker at the time of trial; police officers who responded to and investigated domestic-violence incidents between Mother and Boyfriend that were reported in April 2021, August 2022, and September 2022; Mother's therapist; a licensed psychologist who performed a psychological evaluation on Mother; doctors who testified to Son 2's extensive medical needs; and G.C., Son 1's adoptive father, who wanted to adopt Son 2. Documentary evidence admitted during trial included a copy of the order terminating Mother's parental rights to Son 1, copies of temporary orders in the case, a copy of Mother's psychological evaluation, a copy of her therapist's notes, and a copy of Son 2's medical records.

The Department caseworkers testified that Mother had completed some but not all of her court-ordered services, had failed to submit to 30 of 35 requested drug tests, and had failed to address the Department's concerns regarding domestic violence. Of particular concern to the Department was Mother continuing to live with Boyfriend and minimizing the seriousness of his behavior despite multiple assaults that Boyfriend had committed against her. The police officers who responded to and investigated the assaults testified to their severity. According to Detective Cristopher Willie of the Austin Police Department, who had investigated the April 2021 assault, Boyfriend had "grabbed [Mother], pushed her onto a bed, choked her, and all the while this was happening, [Son 2] was in the bathtub," unattended. As a result of that assault, Mother "had multiple lacerations and bruises on her face" and "petechia," i.e., burst blood vessels, "from the

3

strangulation around her eyes and face." Other assaults involved Boyfriend hitting Mother in the head with his foot, grabbing her hair when she was exiting their vehicle and trying to pull her back inside while the vehicle was moving, and causing her mouth to bleed.

Another key issue during trial was Son 2's medical needs and whether Mother could meet those needs. Doctors testified that Son 2 had been diagnosed with dysphagia with aspiration, chronic lung disease, and developmental delays that required frequent appointments with specialists and therapists. Due to the dysphagia, all liquids that Son 2 drank had to be thickened appropriately or there was a risk that the liquid might enter his lungs, causing further damage to the organs. Son 2 required daily medication and breathing treatments and weekly physical, occupational, and speech / feeding therapy. The court ordered Mother to attend all of Son 2's medical appointments so that she could learn about his needs and how to care for him appropriately, and the Department created a binder of paperwork from Son 2's medical appointments and educational materials to assist Mother in understanding his needs. However, the caseworkers testified that during the case, Mother was unable to demonstrate an adequate understanding of Son 2's special needs and had attended only three out of the seventeen medical appointments that the court had ordered her to attend.

Son 1's adopted father testified that he had knowledge of Son 2's medical conditions, was aware of his current medical providers, treatments, and therapies, and had attended some of Son 2's medical appointments. He also testified that Son 1 and Son 2 got along well, and he wanted to adopt Son 2 to maintain the "really close bond" that the brothers shared. The Department believed that Son 2 should be placed with his brother and his brother's adopted family.

Mother did not testify during trial. The sole witness to testify for Mother was Boyfriend, who testified that he and Mother were now married, referred repeatedly to the domestic-violence incidents as "accidents," pleaded the Fifth Amendment and refused to discuss details of the domestic-violence incidents due to his pending criminal charges related to those incidents, and acknowledged that although he "hoped" that there would be no more domestic violence in the future between him and Mother, he was unable to say that such incidents "will never happen" again.

At the conclusion of trial, the jury found by clear and convincing evidence that Mother had: (1) knowingly placed or knowingly allowed Son 2 to remain in conditions or surroundings which endanger the physical or emotional well-being of Son 2; (2) engaged in conduct or knowingly placed Son 2 with persons who engaged in conduct which endangers the physical or emotional well-being of Son 2; (3) had her parent-child relationship terminated with respect to another child based on a finding that she had endangered that child; and (4) failed to comply with the provisions of a court order that specifically established the actions necessary for Mother to obtain the return of Son 2. *See* Tex. Fam. Code. § 161.001(b)(1)(D), (E), (M), (O). The jury also found that termination of Mother's parental rights was in Son 2's best interest. *See id*. § 161.001(b)(2). The district court rendered judgment in accordance with the jury's verdict and terminated Mother's parental rights to Son 2. This appeal followed.

After reviewing the entire record and the *Anders* brief submitted on Mother's behalf, we have found nothing in the record that might arguably support an appeal. Our review included the district court's endangerment findings, *see* Tex. Fam. Code § 161.001(b)(1)(D), (E), and we have found no issues that could be raised on appeal with respect to those findings, *see*

5

*In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019). We agree with counsel that the appeal is frivolous.

## CONCLUSION

We affirm the district court's decree of termination.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Baker and Triana

Affirmed

Filed: May 31, 2023