# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00641-CV

---

### T. M., Appellant

### v.

### Texas Department of Family and Protective Services, Appellee

---

**FROM THE 425TH JUDICIAL DISTRICT COURT OF WILLIAMSON COUNTY
NO. 22-0008-CPS425, THE HONORABLE BETSY F. LAMBETH, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant T.M. (Father) appeals from the district court's order, following a bench trial, terminating his parental rights to his daughter, S.M. (Sarah), who was approximately two years old at the time of trial.[1]  Father's court-appointed counsel has filed a motion to withdraw and an *Anders* brief concluding that the appeal is frivolous and without merit.  *See Anders v. California*, 386 U.S. 738, 744 (1967); *In re P.M.*, 520 S.W.3d 24, 27 & n.10 (Tex. 2016) (per curiam) (approving use of *Anders* procedure in appeals from termination of parental rights).  The brief meets the requirements of *Anders* by presenting a professional evaluation of the record and demonstrating why there are no arguable grounds to be advanced on appeal.  *See* 386 U.S. at 744; *Taylor v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 646-47 (Tex. App.—Austin 2005, pet. denied).  Counsel has certified to this Court that he has provided Father

---

[1]  For the child's privacy, we refer to her using a pseudonym and to her parents and other relatives by their familial relationships to each other.  *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8.

with a copy of the *Anders* brief and informed him of his right to examine the appellate record and to file a pro se brief. No pro se brief has been filed.

Upon receiving an *Anders* brief, we must conduct a full examination of the record to determine whether the appeal is wholly frivolous. *See Penson v. Ohio*, 488 U.S. 75, 80 (1988); *Taylor*, 160 S.W.3d at 647. The case began in 2021 following allegations of domestic violence involving Father and Sara's mother, M.H. (Mother), committed in the presence of Sarah and her sister, K.M (Kate),[2] and of Father's violation of an emergency protective order that was entered against him following his arrest in July 2021 for assaulting Mother while she was pregnant with Sarah. According to the Department's removal affidavit, a copy of which was admitted into evidence at trial,

> The Department has significant concerns that [Mother] and [Father] continue to engage in domestic violence altercations in the presence of these vulnerable-aged children. These incidents seem to be escalating in nature and neither [Father] nor [Mother] are abiding by [Father's] bond conditions, which include a 200 foot stay away order. Information obtained by the Department states that [Father] has been in the same home as [Mother] and the children every night since she left the [domestic-violence] shelter.

> During the course of the investigation, which lasted from July 31, 2021 through February 2, 2022, the Department received 4 additional intakes alleging domestic violence between [Mother] and [Father] and of [Father] violating the protective order.

When Mother gave birth to Sarah at the hospital in October, Kate told the Department that Father had hit both her and Mother:

---

[2] Kate, who was approximately seven years old at the time of trial, was Mother's daughter with another man.

During an interview, [Kate] said she is sad that [Father] has been drinking alcohol and worries about being with him alone with [Mother] in the hospital. [Father] hits [Kate] and he hit her 4 times on October 27, 2021. [Father] put a sheet over her and covered her face with a pillow. [Kate] hid in the closet with an iPad. The abuse happens when [Father] drinks alcohol. [Father] hits [Mother] as well.

In February 2022, the Department received another report of domestic violence committed by Father against Mother:

[Kate] stated that the night prior, her stepfather, [Father], was at the apartment, intoxicated and that there was an argument between [Mother] and [Father]. [Kate] reported that [Mother] took her and her sister into the bedroom and locked the door. [Mother] attempted to call 911 on her iPad because her cell phone was broken. [Father] used a knife to break into the bedroom and began waving the knife in [Mother's] face and threatening [Mother] with the knife. [Father] took the iPad away from her so she was unable to make the call. [Kate] reported [Father] then got on [Mother's] back and began hitting her while the baby, [Sarah], was next to [Mother].

After that, the Department sought and obtained emergency removal of the children from Father and Mother and filed a petition seeking termination of Father's and Mother's parental rights. While the case was pending, Father pleaded guilty to assaulting Mother while she was pregnant with Sarah, and he was sentenced to four years' imprisonment.

The case proceeded to a bench trial. Father testified at trial and admitted to committing domestic violence against Mother. However, he denied that it occurred in the children's presence. He also denied hitting Kate, claiming that her accusations against him were false and that "her mother put her up to saying those things." Father's plan for Sarah was "to basically get out of the situation [he's] in and get out and have a stable job and a place to live for [him] and [his] daughter." Father expected to get out of jail on parole before serving the entirety of his four-year sentence, but he acknowledged that he did not know when that would be. Father

further acknowledged not completing his court-ordered services and testified that he could not do so while he was in jail. He had, however, completed classes while in jail on topics such as parenting and anger management and attended 52 hours of Alcoholics Anonymous. Father had also attended therapy and visited Sarah before his incarceration.

Department caseworker Lauren Juarez testified that the Department's primary concern in the case was the "allegations of continued domestic violence between" Father and Mother. The Department was also concerned about Father's alcohol abuse. Juarez explained that Father had assaulted Mother while she was six months pregnant and had impeded Mother's breathing while doing so, which Juarez believed had endangered Sarah.

Juarez further testified that Sarah had been placed with her maternal grandfather and aunt and that Sarah "is doing great where she is right now." Sarah's needs were being met there, and her aunt was planning on adopting her. Kate had also been placed in the same home, and Sarah was "very bonded to her." Juarez expressed concern that if Father's rights were not terminated, Sarah and Kate would be separated, and Juarez did not believe separation from her sister was in Sarah's best interest.

CASA volunteer Joyice Gere testified that Sarah was "thriving" in her current placement and "progressing just like a normal little girl." She believed that her current placement was the best placement for Sarah and that "it would be hard" and traumatic for Sarah to be placed elsewhere. Gere explained, "She's very bonded to [Kate,] she's very bonded to her grandmother. She gets along with everyone really well in the house. . . . She's never been away from [Kate]." Gere added, "I think the girls will thrive best if they stay together and they're in a safe and stable home. They're in one now and leaving it to where it's open and they're not really adopted, they're just staying with parents is a very different feeling and I don't think that's good

4

for their development, their self-esteem." Gere did not believe that Father and Mother would be able to meet all of Sarah's needs.

At the conclusion of trial, the district court found by clear and convincing evidence that Father had (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; (3) constructively abandoned the child; (4) failed to comply with the provisions of a court order that specifically established the actions necessary for Father to obtain the return of the child; and (5) knowingly engaged in criminal conduct that has resulted in a conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (N), (O), (Q). The district court further found by clear and convincing evidence that termination of Father's parental rights was in the child's best interest. *See id.* § 161.001(b)(2). In accordance with those findings, the district court terminated Father's parental rights to Sarah.[3]

After reviewing the entire record and the *Anders* brief submitted on Father's behalf, we have found nothing in the record that might arguably support an appeal. Our review included the district court's endangerment findings, *see* Tex. Fam. Code § 161.001(b)(1)(D), (E), and we have found no issues that could be raised on appeal with respect to those findings, *see*

---

[3] The district court also terminated Mother's parental rights to Sarah and Kate, finding that Mother had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children and that termination of her parental rights was in the best interest of the children. Mother has not appealed.

*In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019). We agree with counsel that the appeal is frivolous.

## CONCLUSION

We affirm the district court's order of termination.[4]

_____

Gisela D. Triana, Justice

Before Justices Baker, Triana, and Smith

Affirmed

Filed:  January 4, 2024

---

[4] We deny counsel's motion to withdraw. The Texas Supreme Court has held that the right to counsel in suits seeking termination of parental rights extends to "all proceedings [in the Texas Supreme Court], including the filing of a petition for review." *In re P.M.*, 520 S.W.3d 24, 27-28 (Tex. 2016) (per curiam). Accordingly, if after consulting with counsel, Father desires to file a petition for review, counsel should timely file with the Texas Supreme Court "a petition for review that satisfies the standards for an *Anders* brief." *See id*.