# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-24-00671-CV

B. B., Appellant

v.

Texas Department of Family and Protective Services, Appellee

FROM THE 146TH DISTRICT COURT OF BELL COUNTY
NO. 23DFAM341910, THE HONORABLE DALLAS SIMS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant B.B. (Mother) appeals from the district court's decree, following a bench trial, terminating her parental rights to her son, B.P. (Bobby), who was approximately one year old at the time of trial.[1]   Mother's court-appointed counsel has filed a motion to withdraw and an *Anders* brief concluding that the appeal is frivolous and without merit.  *See Anders v. California*, 386 U.S. 738, 744 (1967); *In re P.M.*, 520 S.W.3d 24, 27 & n.10 (Tex. 2016) (per curiam) (approving use of *Anders* procedure in appeals from termination of parental rights). The brief meets the requirements of *Anders* by presenting a professional evaluation of the record and demonstrating why there are no arguable grounds to be advanced on appeal.  *See* 386 U.S. at 744; *Taylor v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 646-47 (Tex. App.—Austin 2005, pet. denied).

---

[1]  For the child's privacy, we refer to him using a pseudonym and to his parents and other relatives by their familial relationships to each other.  *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8.

Counsel has certified to this Court that she has provided Mother with a copy of the *Anders* brief and informed her of her right to examine the appellate record and to file a pro se brief. No pro se brief has been filed. Upon receiving an *Anders* brief, we must conduct a full examination of the record to determine whether the appeal is wholly frivolous. *See Penson v. Ohio*, 488 U.S. 75, 80 (1988); *Taylor*, 160 S.W.3d at 647.

This case began in October 2023, when the Texas Department of Family and Protective Services (the Department) received a report alleging neglectful supervision of Bobby. According to the Department's removal affidavit, a copy of which was admitted into evidence at trial, when Bobby was born in August 2023, Mother had an ongoing CPS case involving an older child who had been removed from Mother's care due to Mother's history of substance abuse, specifically methamphetamine and marijuana, and Mother had "not drug tested since June or worked any CPS services during the duration of the case." Consequently, the Department was concerned for Bobby's "safety and supervision while in [Mother's] care." When the Department interviewed Mother in October 2023, she admitted to previous drug abuse, including "using PCP and THC in the month of September 2023," to using drugs with her friends, and to dipping her cigarettes in PCP, which Mother explained "makes her numb to everything." Mother acknowledged that "she always makes bad decisions" and "has been 'playing games' and tr[ying] to 'beat' the Department." Mother refused to take an oral drug test following the interview "because she knew her test would be positive." Bobby's father, S.P. (Father), was also interviewed by the Department and admitted to drug use.

Based on these and other allegations, the Department filed its petition seeking termination of Mother's and Father's parental rights to Bobby and sought and obtained temporary managing conservatorship. The district court ordered Mother and Father to complete

various services to obtain Bobby's return, including a psychological evaluation, individual counseling, protective-parenting classes, and random drug testing on a weekly basis.

The case proceeded to a one-day bench trial in August 2024. Before the trial began, Mother moved for an extension of the one-year dismissal date, which was on October 7, 2024. The district court announced that it would consider Mother's testimony for purposes of both the extension request and the final hearing, if the trial court denied the request. Mother testified that she wanted an extension so that she could prove to the court that she can be sober and do the required drug testing, which she had not done for most of the case. Mother acknowledged that "since this [case] has been going on," she has "been very selfish and not honest about a lot of things" and that the case "shouldn't have been going on this long." However, she "wish[ed] the courts would allow [her] more time to really just work on [her]self" because she "really need[ed] to do this" for herself, her parents, and her family.

Mother testified that since September 2023, she had resided in a furnished three-bedroom, two-bathroom residence in Killeen that she believed would be appropriate for a child. However, Mother acknowledged that the Department had not visited the home and that she was planning on moving to a new home in September 2024. Mother further testified that she currently worked for the Veteran's Hospital in Temple, that she had completed her protective-parenting classes, and that she had completed and been successfully discharged from individual therapy.

Regarding her drug use, Mother testified that she had attended and completed in-patient drug rehabilitation from June 16 through July 18, 2024. However, she admitted that she had been using drugs throughout the case, that she tested positive for marijuana on the day she was released from rehab (although she claimed that the test showed use from before she

3

entered rehab), that she had not submitted to any weekly drug testing following her release, that she used methamphetamine with a neighbor on July 23, following the burial of her father, and that she used methamphetamine on two other occasions after that. Due to her failure to submit to weekly drug testing, Mother had only one visit with Bobby during the case.

The district court denied Mother's request for an extension and proceeded to hear other evidence in the case, including the Department's removal affidavit, Mother's and Father's service plans, the psychological evaluations for each parent, and positive drug test results for Mother. The district court also heard testimony from Father, who admitted to ongoing drug use, and Department caseworker Jamoire Maples, who testified that the Department had concerns with Mother due to her failure to drug test on a weekly basis, which had prevented her from visiting Bobby. Maples explained that "the visits are important for her to build that bond" with Bobby so that "he would be familiar with her," and the drug testing was important because Mother "still hasn't shown that she can be sober." The Department was concerned that if Bobby were returned to Mother, "she would still be using drugs and wouldn't be able to keep [Bobby] safe."

The Department's plan for Bobby was adoption by his paternal aunt and her husband, with whom Bobby had been placed since December 2023. Maples testified that the couple wanted to adopt Bobby, that he had bonded with them, and that he was "doing well" and "thriving" in their care. The Department recommended termination of Mother's and Father's parental rights so that adoption could proceed.

The guardian ad litem for Bobby also recommended termination of Mother's and Father's parental rights. She did not believe that Bobby would be "safe if he were to be returned to either parent" because of their ongoing drug use. She opined that Bobby "deserves

4

permanency and stability, and he's been getting that with his paternal aunt and uncle since he was placed with them in December." She added, "They're very bonded. His needs are met."

At the conclusion of trial, the district court found by clear and convincing evidence that Mother and Father had (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; (3) constructively abandoned the child; and (4) failed to comply with the provisions of a court order that specifically established the actions necessary for Mother to obtain the return of the child. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (N), (O). The district court further found by clear and convincing evidence that termination of Mother's and Father's parental rights was in the child's best interest. *See id*. § 161.001(b)(2). In accordance with those findings, the district court terminated Mother's and Father's parental rights to Bobby. This appeal by Mother followed.

After reviewing the entire record and the *Anders* brief submitted on Mother's behalf, we have found nothing in the record that might arguably support an appeal. Our review included the district court's endangerment findings, *see* Tex. Fam. Code § 161.001(b)(1)(D), (E), and we have found no issues that could be raised on appeal with respect to those findings, *see In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019). We agree with counsel that the appeal is frivolous.

We affirm the termination decree.[2]

---

[2] We deny counsel's motion to withdraw. The Texas Supreme Court has held that the right to counsel in suits seeking termination of parental rights extends to "all proceedings [in the Texas Supreme Court], including the filing of a petition for review." *In re P.M.*, 520 S.W.3d 24, 27-28 (Tex. 2016) (per curiam). Accordingly, if after consulting with counsel, Mother desires to

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed:   December 20, 2024

_____

file a petition for review, counsel should timely file with the Texas Supreme Court "a petition for review that satisfies the standards for an *Anders* brief."  *See id*.