# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00618-CV

---

### E. T., Appellant

### v.

### Texas Department of Family and Protective Services, Appellee

---

### FROM THE 459TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-19-003547, THE HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant E.T. (Mother) appeals from the district court's order, following a bench trial, terminating her parental rights to her daughter, L.D.H. (Lilly), who was approximately six years old at the time of trial, and son L.H. (Landon), who was approximately four years old at the time of trial.[1]  Mother's court-appointed counsel has filed an *Anders* brief concluding that the appeal is frivolous and without merit.  *See Anders v. California*, 386 U.S. 738, 744 (1967); *In re P.M.*, 520 S.W.3d 24, 27 & n.10 (Tex. 2016) (per curiam) (approving use of *Anders* procedure in appeals from termination of parental rights).  The brief meets the requirements of *Anders* by presenting a professional evaluation of the record and demonstrating why there are no arguable grounds to be advanced on appeal.  *See* 386 U.S. at 744; *Taylor v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 646-47 (Tex. App.—Austin 2005, pet. denied).

---

[1] For the children's privacy, we refer to them using pseudonyms and to their parents and other relatives by their familial relationships to each other.  *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8.

Counsel has certified to this Court that she has provided Mother with a copy of the *Anders* brief and informed her of her right to examine the appellate record and to file a pro se brief. No pro se brief has been filed. Upon receiving an *Anders* brief, we must conduct a full examination of the record to determine whether the appeal is wholly frivolous. *See Penson v. Ohio*, 488 U.S. 75, 80 (1988); *Taylor*, 160 S.W.3d at 647.

The case began in 2019, following allegations that included neglectful supervision of Lilly by Mother. During its investigation, the Texas Department of Family and Protective Services (the Department) began to suspect that Mother was exposing the children to drugs. The Department drug-tested Landon's hair, which tested positive for cocaine. Based on this and other concerns, the district court removed the children from Mother's care and ordered Mother and the father of the children (Father) to engage in services. In 2021, Mother and Father agreed to a "Final Decree of Conservatorship" that appointed the Texas Department of Family and Protective Services (the Department) as nonparent sole managing conservator of the children and Mother and Father as possessory conservators.

In April 2022, the Department filed a motion to modify the final decree of conservatorship and sought termination of Mother's and Father's parental rights to the children. The case proceeded to a two-day bench trial in August 2024. Several witnesses testified at trial, including Mother, three of the Department caseworkers who had been assigned to the case, the Court Appointed Special Advocate (CASA) volunteer assigned to the case, and Landon's foster mother.

At trial, the Department's case for termination of Mother's parental rights was based primarily on allegations that Mother had constructively abandoned the children and failed to complete her court-ordered services. These services included visiting with Landon weekly,

2

visiting with Lilly twice per month, completing parenting classes, submitting to a psychological evaluation and following its recommendations, participating in individual therapy, and submitting to random drug testing.

Department caseworker Ashley Jasso had been assigned to the case beginning when the children were removed in 2020, became the case supervisor in 2021, and continued supervising the case until she left the Department in summer 2022. Jasso testified that during her time on the case, Mother engaged in individual therapy, which included a protective-parenting component, and completed a psychological evaluation. However, Mother did not engage in drug testing, did not follow the recommendations of her psychological evaluation, did not complete a Family Strength and Needs Assessment (FSNA), and failed to inform the Department of her address and maintain contact with the Department. Regarding Mother's visits with the children, Jasso testified that after Landon was placed in a foster home, Mother's visits "pretty much became nonexistent" and that there was a six-month period in 2021 and 2022 when Mother had no visits with the children.

Department caseworker Christi Lyle was assigned to the case beginning in November 2021, after Jasso had been promoted to case supervisor, until July 2022. Lyle testified that during her time on the case, she was unable to meet with Mother, despite "reach[ing] out over phone calls, text messages, emails," "a group chat with her attorney," and "ma[king] several attempts to visit the various addresses that we had on file." Lyle also testified that during her time on the case, Mother had not engaged in any services, although Lyle acknowledged that before she was assigned to the case, Mother had completed a psychological evaluation and parenting classes.

3

Department caseworker Melynie Harris was assigned the case beginning in July 2022 through the time of trial. Harris testified that she did not know where Mother lived because Mother had not disclosed her address to Harris, despite having been ordered by the court to do so. Regarding drug testing, Harris recounted that while she was on the case, Mother completed "two or three drug tests" out of 47 requests. Regarding visits with the children, Harris testified that from September 2022 through November 2023, when the visits were stopped by the Department, Mother had attended only eight in-person visits, which Harris testified were inadequate to maintain a parent-child relationship.

Harris testified that Lilly was currently placed in a medical treatment foster home where she was "doing well," although Lilly had behavioral issues that made finding a permanent placement difficult. Harris explained that Lilly had been in a total of 14 different placements following removal, and she agreed that Lilly's current placement was "the best she has ever had." Although the placement was not "currently an adoptive home," Harris testified that it was possible that it could eventually become an adoptive home for Lilly if parental rights were terminated. Harris explained, "They have communicated to me that they are willing to be a long-term placement. They love having her in their home, in spite of the behavioral problems. They—they're definitely just wanting what's best for [Lilly]." Harris added, "She has her medical needs being met as well as her mental needs being met at the—at the foster home. She's built a bond and connection with the current placement."

Harris further testified that Landon was "doing well" in his current placement and that she had no concerns for him there. She explained that Landon "has been in that placement for, I believe, over three years. He knows her as mom. He has stability there. The caregiver's—the caregiver can meet all his basic needs, medical needs." She added that the placement had

been facilitating sibling contact between Lilly and Landon, which was important for the children moving forward.

Landon's foster mother testified that she planned on maintaining Landon's connection with his biological family "when it is safe and appropriate" to do so. The foster mother testified that she had made a chart of the visits between Landon and Mother and that between May 2021 and September 2022, Mother had visited Landon "zero" times and that after September 2022, Mother had visited him eight times. The foster mother also testified that Landon was "very, very bonded" with her family and that her plan was to adopt Landon if parental rights were terminated and to continue being a placement for Landon if parental rights were not terminated.

The CASA volunteer testified that CASA had no concerns with Landon's and Lilly's current placements. She further testified that Lilly's behavior had improved in her current placement and that the placement was "willing to keep [Lilly] for as long as she needs to be with them." The CASA volunteer also expressed concerns about Mother's failure to demonstrate "that she can safely parent [Lilly]" due to Lilly's special needs.

Mother testified that the last time she had seen her children was "probably about a year" before trial. She testified that she had visited the children "as often as the visits were offered" to her and that when she was unable to make the visits, the reason was lack of transportation. Mother agreed with the Department that she "missed a lot of drug tests" and refused to take hair-follicle tests, but she claimed this was because she had "braids and stuff" that made hair testing difficult. She explained, "But I get random drug tests, and I need time to take down braids, so it's not just going to happen. It takes hours."

5

At the conclusion of trial, the district court found by clear and convincing evidence that Mother had constructively abandoned the children and failed to comply with the provisions of a court order that specifically established the actions necessary for Mother to obtain the return of the children. *See* Tex. Fam. Code § 161.001(b)(1)(N), (O). The district court further found by clear and convincing evidence that termination of Mother's parental rights was in the children's best interest. *See id*. § 161.001(b)(2). In accordance with those findings, the district court terminated Mother's parental rights to the children. This appeal by Mother followed.

After reviewing the entire record and the *Anders* brief submitted on Mother's behalf, we have found nothing in the record that might arguably support an appeal. We agree with counsel that the appeal is frivolous.

We affirm the order terminating Mother's parental rights.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed: February 27, 2025

6